**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN ILLINOIS**

| | |
|---|---|
| ASTELLAS US HOLDING, INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| STARR INDEMNITY AND LIABILITY ) | Judge _____ |
| COMPANY, ) | |
| ) | |
| and ) | |
| ) | |
| BEAZLEY INSURANCE COMPANY, INC., ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| and ) | |
| ) | |
| FEDERAL INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

1.     Plaintiff, Astellas US Holding, Inc. ("Astellas" or the "Company"), for its

Complaint against Defendants, Starr Indemnity and Liability Company ("Starr"), Beazley

Insurance Company, Inc. ("Beazley"), and Federal Insurance Company ("Federal"), states as

follows:

**NATURE OF THE ACTION**

2.     In this action, Astellas seeks compensatory damages for Starr's breach of its

duties under an insurance policy it issued to Astellas, which provides broad coverage for defense

costs arising from alleged **Wrongful Acts**[1] by Astellas.  Astellas seeks damages it suffered due

to Starr's refusal to reimburse Astellas for **Defense Costs** (i.e., covered defense and investigation

---

[1] Terms in bold letters shall have the meanings ascribed to them in Exhibit A.

costs) that Astellas incurred, and continues to incur, to defend and investigate a **Claim** asserted by the United States Government for alleged Federal health care offenses. Astellas also seeks a declaration that Beazley, whose policy is excess to Starr's, must indemnify Astellas for all **Defense Costs** relating to this **Claim** in excess of the retention and the underlying limit of $5 million, up to its policy's limit of $5 million. Finally, Astellas seeks a declaration that Federal, whose policy is excess to Starr's and Beazley's, must indemnify Astellas for **Defense Costs** relating to this **Claim** upon exhaustion of the $10 million in underlying limits, up to its policy's limit of $10 million.

## THE PARTIES

3.       Astellas is a corporation organized and existing under the laws of Delaware, with its principal place of business in Northbrook, Illinois.

4.       Starr is a corporation organized and existing under the laws of Texas, with its principal place of business in New York, New York.

5.       Beazley is a corporation organized and existing under the laws of Connecticut, with its principal place of business in Farmington, Connecticut.

6.       Federal is a corporation organized and existing under the laws of Indiana, with its principal place of business in Warren, New Jersey. (Starr, Beazley and Federal are collectively referred to herein as "Defendants").

## JURISDICTION AND VENUE

7.       This Court has jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 because Astellas is not a citizen of the same states as Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8.       Venue is proper in the District of the Northern District of Illinois because a substantial part of the events and transactions giving rise to the controversy occurred in Illinois,

as required by 28 U.S.C. § 1391. Among other things, Defendants delivered the insurance policies at issue to Astellas's offices in Illinois; Astellas approved and initiated payment of premiums for the policies from Illinois; and the financial harm to Astellas as a result of Starr's wrongful conduct occurred and is occurring in Illinois.

9. Personal jurisdiction in Illinois is proper because, at all relevant times, Defendants have been licensed or authorized to sell insurance in and have transacted business in Illinois, including with Astellas as to the policies at issue in this action. Defendants also performed acts within Illinois for the purpose of realizing pecuniary benefit, namely contracting to insure persons, property, or risks located in Illinois, including collecting premiums for the policies at issue in this action.

## THE STARR POLICY

10. Starr provided Directors and Officers Liability Coverage ("D&O Coverage") under a "Resolute Portfolio For Private Companies" insurance policy to Astellas for the period April 1, 2015 to April 1, 2016 (the "Starr Policy," Exhibit A). Subject to its terms and conditions, the Starr Policy provides a $5 million limit of liability excess of a $500,000 self-insured retention.

11. The applicable insuring agreements in the Starr Policy provide, in relevant part:

**1. INSURING AGREEMENTS**

A. The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim** first made during the **Policy Period** . . . against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, except if the **Company** has indemnified the **Insured Person** for such **Loss**.

B. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** . . . against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, if the **Company** has indemnified the **Insured Person** for such **Loss**.

NAI-1503166479v1

C. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** . . . against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

(Policy, D&O Liability Coverage Section, at p. 1.)

12. The term "**Claim**" is expansively defined to include any "(1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**."

13. The term "**Wrongful Act**" is also defined broadly as, in relevant part:

(1) with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such or any matter claimed against an **Insured Person** by reason of such capacity;

\* \* \*

(3) with respect to the **Company**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**.

14. The term "**Loss**" includes "damages, settlements or judgments" and "**Defense Costs**." **Defense Costs** means "reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**."

15. **General Condition 5, NOTICE OF CLAIM**, provides in relevant part:

The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice of a **Claim** . . . to the **Insurer** at the address set forth in Item 9 of the Declarations. \* \* \*

With respect to the Directors & Officers Liability Coverage Section, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** general counsel or risk manager (or individuals with equivalent responsibilities) becomes aware of the **Claim**; however, in no event shall such notice be

provided later than sixty (60) days after the expiration of
the **Policy Period**. * * *

## THE BEAZLEY AND FEDERAL POLICIES

16.     Beazley provided excess D&O Coverage to Astellas under an "Excess Private

Companies Insurance Policy" covering the period April 1, 2015 to April 1, 2016 (the "Beazley

Policy," Exhibit B).  Except where it is specifically modified (not relevant here), the Beazley

Policy follows the terms and conditions of the Starr Policy, providing a $5 million limit of

liability excess of the Starr Policy's $5 million limit of liability and the applicable $500,000 self-

insured retention.  The Beazley Policy covers **Loss** (including **Defense Costs**) after all of the

**Underlying Limits** (as that term is defined in the Beazley Policy) have been exhausted through

payments of amounts covered under the Starr Policy.

17.     Federal provided excess D&O Coverage to Astellas under an "Excess Policy"

covering the period April 1, 2015 to April 1, 2016 (the "Federal Policy," Exhibit C).  Except

where it is specifically modified (not relevant here), the Federal Policy follows the terms and

conditions of the Starr Policy, providing a $10 million limit of liability excess of the Starr

Policy's and the Beazley Policy's combined limits of $10 million and the applicable $500,000

self-insured retention.  The Federal Policy covers **Loss** (including **Defense Costs**) after all of the

**Underlying Limits** (as that term is defined in the Federal Policy) have been exhausted through

payments of amounts covered under the Starr and Beazley Policies.

## THE CLAIM

18.     In November 2005, the Department of Health and Human Services, Office of

Inspector General ("OIG") issued a Special Advisory Bulletin titled "Patient Assistance

Programs for Medicare Part D Enrollees" (the "OIG Bulletin").  The OIG Bulletin advised that

beginning January 1, 2006, Medicare Part D would offer enrollees broad coverage for outpatient

NAI-1503166479v1

prescription drugs and Medicare beneficiaries who enroll in Part D would no longer be eligible

to participate in patient assistance programs ("PAPs") historically sponsored by pharmaceutical

companies.  The OIG Bulletin further stated:

> Pharmaceutical manufacturers have expressed interest in
> continuing to assist Medicare Part D enrollees of limited means
> who do not qualify for the low-income subsidy.
>
> OIG is mindful of the importance of ensuring that financially
> needy beneficiaries who enroll in Part D receive medically
> necessary drugs, and OIG supports efforts of charitable
> organizations and others to assist financially needy beneficiaries,
> as long as the assistance is provided in a manner that does not run
> afoul of the Federal anti-kickback statute or other laws. * * *
>
> We have been asked whether the anti-kickback statute will be
> implicated if pharmaceutical manufacturer PAPs continue to offer
> assistance to financially needy Medicare beneficiaries who enroll
> in Part D by subsidizing their cost-sharing obligations for covered
> Part D drugs.  For the reasons set forth below and consistent with
> extant OIG guidance, we conclude that pharmaceutical
> manufacturer PAPs that subsidize Part D cost-sharing amounts
> present heightened risks under the anti-kickback statute.  However,
> in the circumstances described in this Bulletin, cost-sharing
> subsidies provided by *bona fide*, independent charities unaffiliated
> with pharmaceutical manufacturers should not raise anti-kickback
> concerns, even if the charities receive manufacturer contributions.
> In addition, we believe other arrangements described in this
> Bulletin, if properly structured, may pose reduced risk.  Thus, we
> believe lawful avenues exist for pharmaceutical manufacturers and
> others to help ensure that all Part D beneficiaries can afford
> medically necessary drugs.

19.    In May 2014, OIG issued a Supplemental Special Advisory Bulletin on

Independent Charity Patient Assistance Programs (the "Supplemental OIG Bulletin").  Among

other things, the Supplemental OIG Bulletin stated:

> We continue to believe that properly structured PAPs can help
> Federal health care program beneficiaries. This Supplemental
> Bulletin provides additional guidance regarding PAPs operated by
> independent charities (Independent Charity PAPs) that provide
> cost-sharing assistance for prescription drugs.  To address some of
> the specific risks that have come to our attention in recent years,

> this guidance discusses problematic features of PAPs with respect
> to the anti-kickback statute, section 1128B(b) of the Act, and the
> provision of the Civil Monetary Penalties Law prohibiting
> inducements to Medicare and Medicaid beneficiaries (Beneficiary
> Inducements CMP), section 1128A(a)(5) of the Act.  Other
> potential risk areas, including, for example, potential liability
> under the False Claims Act, 31 U.S.C. 3729–33, or other Federal
> or State laws, are not addressed here.

20.     On March 3, 2016, the U.S. Department of Justice (the "Justice Department")

issued a subpoena to Astellas demanding certain documents relating to its ongoing industry-wide

investigation of Astellas and other pharmaceutical companies for alleged "Federal health care

offenses" (the "Subpoena").

21.     Specifically, the Subpoena asserted that the documents were "necessary in the

performance of the responsibility of the United States Department of Justice to investigate

Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies

to violate:  18 U.S.C. §§ 669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001,

1027, 1341, 1343 or 1954 if the violation or conspiracy relates to a health care benefit program

(defined in 18 U.S.C. § 24(b))."  The asserted "Federal health care offenses" in this case

allegedly arise from charitable donations to Independent Charitable PAPs (as that term is used in

the Supplemental OIG Bulletin).

22.     Among other things, the Subpoena demanded that Astellas produce "[d]ocuments

sufficient to show by date and amount all payments from Astellas to any 501(c)(3) organization

that provides financial assistance to patients taking drugs sold by Astellas, and, where applicable,

the specific fund or program within any such organization that received the payment or to which

Astellas earmarked the payment."  Each of the Defendants has a copy of the Subpoena.

23.     Because the Subpoena was issued under the authority of 18 U.S.C. § 3486, it

constitutes an "authorized investigative demand," which, by statute, can only be issued where

NAI-1503166479v1

there is an ongoing criminal investigation of "Federal health care offenses." The Justice Department has specifically stated that before an "authorized investigative demand" can be issued, the U.S. Attorney must consider (1) "[w]hether the background of the criminal investigation for which the records are being subpoenaed relates to any act or activity involving a Federal health care offense (as defined in 18 U.S.C. § 24(a)) as required by 18 U.S.C. § 3486," and (2) "[w]hether appropriate consideration has been given to the manner in which to enforce the investigative demand in the event of noncompliance." (U.S. Attorney Manual, Health Care Fraud, § 9-44.203, at https://www.justice.gov/usam/usam-9-44000-health-care-fraud.)

24.     Astellas does not dispute that it provided charitable donations to independent 501(c)(3) organizations that assist financially needy patients, or that some of the patients assisted by those organizations may have taken drugs sold by Astellas. The dispute is whether those donations constituted "Federal health care offenses." Astellas maintains that its donations were lawful and appropriate and were made for the purpose of contributing to the pharmaceutical safety net for financially needy patients, and that the donations were made in a manner consistent with the guidance previously provided in the OIG Bulletin and, subsequently, the Supplemental OIG Bulletin.

25.     On or about March 11, 2016, and as soon as practicable, Astellas (through its broker Marsh USA Inc.) gave each of the Defendants timely written notice of the Subpoena.

26.     On March 28, 2016, Beazley reserved its rights, noting that, "[a]s an excess carrier, Beazley cannot have any coverage obligations until the underlying layer is exhausted. Accordingly, we ask that you provide us with a copy of the primary carrier Starr's coverage position issued with respect to this matter. Upon receipt and review of the same, we will provide you with a more detailed coverage analysis on behalf of Beazley."

27.     On March 15, 2016, Federal acknowledged receipt of the notice and stated that "it must reserve the right to raise all of the defenses available to it under the policy and the law."

28.     On March 29, 2016, Starr denied coverage, asserting that "the Subpoena does not currently fall within the scope of coverage afforded by the Policy."  Specifically, Starr asserted that "the definition of **Claim** requires that, at the very least, there must be a written demand for monetary, non-monetary or injunctive *relief* (emphasis added) made against an **Insured**.  Here, there has been no written demand for relief made against any **Insured** . . . The Subpoena simply requests that certain documents be produced."

29.     Beazley and Federal both subsequently adopted the coverage positions and all reservations of rights and defenses asserted by Starr in its March 29, 2016 letter.

30.     Starr's assertion that the Subpoena "simply requests that certain documents be produced" is wrong.  The Subpoena constitutes a "command" to produce documents by the government—it is not a mere request.  As noted above, the statute authorizing the issuance of such subpoenas, 18 U.S.C. § 3486, deems such subpoenas "investigative demands."  Indeed, the Subpoena warns that "[f]ailure to comply with the requirements of this subpoena will render you liable to proceedings in the district Court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience."  A subpoena under 18 U.S.C.§ 3486 is therefore not a mere request for information, but a substantial demand for compliance by a federal agency with the ability to enforce its demand.

31.     Further, the Subpoena constitutes a demand for *relief*, as required for coverage under the Policy.  The phrase "a written demand for . . . non-monetary relief" is a broad one that includes a written demand for something that the respondent (allegedly) has a legal obligation to provide.  The Justice Department thus claims a right to the subpoenaed documents, and the

Subpoena specifically threatens liability in federal district court for failure to provide those subpoenaed documents.

32.     The Justice Department continues to pursue its investigation of Astellas's practices regarding its charitable donations to 501(c)(3) organizations, and it has subpoenaed additional documents.

33.     On October 19, 2017, the Justice Department requested that Astellas enter into a Limited Tolling Agreement on Statute of Limitations (the "DOJ Limited Tolling Agreement"), which was executed on October 26, 2017.  The DOJ Limited Tolling Agreement states that, "[a]s you are aware," the DOJ "is currently conducting a joint criminal and civil investigation of [] Astellas, and its officers, employees, and agents."  It also states that "[t]he conduct being investigated includes, without limitation, the possible violation by Astellas and certain of its officers, employees, and agents of various federal criminal statutes, including, but not limited to, 42 U.S.C. § 1320a-7b (anti-kickback statute) and 18 U.S.C. § 1347 (health care fraud), and certain civil statutes, including, but not limited to, 31 U.S.C. § 3729-33 (False Claims Act), in connection with Astellas's payments to '501(c)(3)' organizations that provide financial assistance to Medicare beneficiaries."

34.     The DOJ Limited Tolling Agreement also constitutes a **Claim** under the Starr Policy and, because it arises from the same **Wrongful Acts** set forth in the Subpoena, it relates back to the Starr Policy, as well as the Beazley and Federal Policies.  Astellas promptly provided notice of the DOJ Limited Tolling Agreement to Defendants.

35.     The legal fees and expenses that Astellas has incurred since March 3, 2016 arose from Astellas's defense of the alleged **Wrongful Acts** set forth in the Subpoena and its investigation of the facts and circumstances implicated by the Subpoena.  In addition, Astellas

-10-

has advanced costs for individual counsel for certain of its employees and officers for their

defense of these allegations.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT AGAINST STARR

36.     Astellas repeats and re-alleges the allegations of paragraphs 1 through 35 hereof

as if they were fully set forth herein.

37.     The Subpoena constitutes a written demand for non-monetary relief.  Namely, it

demands that Astellas undertake certain actions to produce documents, all in the manner required

by the instructions set forth in the Subpoena.  Accordingly, the Subpoena constitutes a **Claim** as

that term is defined in the Starr Policy.

38.     Astellas's acts set forth above, including the challenged donations to Independent

Charity PAPs, constitute **Wrongful Acts** as that term is defined in the Starr Policy because they

constitute "actual or alleged . . . act[s] by the **Company**."

39.     The reasonable and necessary costs of defending against and investigating the

alleged "Federal health care offenses" being investigated by the Justice Department constitute

**Defense Costs**, and therefore constitute covered **Loss** under the Starr Policy.

40.     The **Defense Costs** that Astellas has incurred to date exceed the applicable

retention in the Starr Policy.

41.     Astellas has complied with all applicable conditions of the Starr Policy.

42.     Starr has refused to pay the amounts owed under the Starr Policy.

43.     By reason of the foregoing, Starr is in breach of its contractual obligations under

the Starr Policy, and Astellas has incurred damages as a direct result of that breach.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT AGAINST BEAZLEY AND FEDERAL

44.　　Astellas repeats and re-alleges the allegations of paragraphs 1 through 43 hereof as if they were fully set forth herein.

45.　　Astellas's defense and investigation of this **Claim** is ongoing.  The total **Defense Costs**, after deducting the self-insured retention, have exceeded or soon will exceed the amounts of the respective **Underlying Limits** of the Beazley and Federal Policies.

46.　　With respect to the Subpoena, the Beazley and Federal Policies, as follow-form policies, provide the same scope of coverage as the Starr Policy.

47.　　Section 1 of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

48.　　Because Beazley and Federal have refused to acknowledge coverage for **Defense Costs** incurred in connection with the Subpoena upon exhaustion of their respective **Underlying Limits**, an actual controversy exists by and among Astellas, Beazley and Federal regarding Beazley's and Federal's respective obligations to pay **Defense Costs** incurred in connection with the Subpoena.

49.　　Astellas therefore seeks a declaration that Beazley and Federal must pay, on Astellas's behalf, all reasonable and necessary costs of investigating and defending this **Claim**, up to each Defendant's respective limit of liability, upon exhaustion of their respective **Underlying Limits**.

-12-

## JURY TRIAL DEMAND

50.     Astellas, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Astellas respectfully prays for the following:

A.     Judgment in favor of Astellas and against Starr on this Complaint, in an amount to exceed $75,000;

B.     A declaration that Beazley and Federal must pay up to their respective limits, on behalf of Astellas, covered **Defense Costs** that Astellas has incurred and will incur in the future in defending and investigating the Subpoena once the **Underlying Limits** of their respective policies have been exhausted; and

C.      An Order awarding Astellas such other and further relief as the Court

deems just and proper, including, but not limited to, prejudgment interest at the applicable rate

for amounts due and owing, and the costs and expenses associated with bringing this claim.

Astellas US Holding, Inc.

*/s/ James A. White*
James A. White
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
Phone:  312-782-3939
Email:  jawhite@jonesday.com

Peter D. Laun (Pro hac vice motion to be filed)
JONES DAY
500 Grant Street - Suite 4500
Pittsburgh, PA 15219-2514
Phone:  412-391-3939
Email:  pdlaun@jonesday.com

Mark J. Andreini (Pro hac vice motion to be filed)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Phone:  216-586-3939
Email:  mjandreini@jonesday.com

Dated: November 13, 2017

NAI-1503166479v1

# Exhibit A



**Starr Indemnity & Liability Company**

500 W. Monroe Street
31st Floor
Chicago, IL 60661

April 2, 2015

Alex Garcia
Marsh USA, Inc.
540 West Madison Street
Chicago, IL 60661

RE:     Astellas US Holding, Inc.

        SISIFNL20068315

Dear Alex:

Enclosed please find an electronic copy of the above captioned policy. Please let me know if you would like the hard copies as well.

Thank you for your business, and please do not hesitate to contact me with any questions or concerns.

Regards,

*David Flannery*

David Flannery, CPCU
Underwriting Manager – Financial Lines

**STARR INDEMNITY AND LIABILITY COMPANY**

399 Park Avenue, New York, NY 10022• Tel. (646) 227-6377

# RESOLUTE PORTFOLIO<sup>SM</sup>
## For Private Companies

**POLICY NUMBER: SISIFNL20068315**
**RENEWAL OF: SISIFNL20068314**

**NOTICE (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.**

**NOTICE (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): THE INSURER HAS NO DUTY TO DEFEND ANY CLAIM UNDER THIS POLICY EXCEPT WITH RESPECT TO ANY CLAIM FOR WHICH THE POLICY SPECIFICALLY STATES THAT DUTY TO DEFEND COVERAGE IS PROVIDED.**

**NOTICE (Applicable to All Coverage Sections): PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

---

## DECLARATIONS

**ITEM 1:** **PARENT COMPANY:**    Astellas US Holding, Inc.

**ADDRESS:**    1 Astellas Way
Northbrook, IL  60062

**ITEM 2:** **POLICY PERIOD:**    From: April 01, 2015 To:  April 01, 2016
(12:01 a.m. Standard Time at the address stated in Item 1)

**ITEM 3:** **COVERAGE SECTIONS**

This policy provides coverage only for the following Coverage Sections if purchased by the **Insured** and indicated by an X.

| | | |
|---|---|---|
| Directors & Officers Liability Coverage Section | Yes ☒ | No ☐ |
| Derivative Demand Coverage | Yes ☒ | No ☐ |
| Employment Practices Liability Coverage Section | Yes ☐ | No ☒ |
| Third-Party Liability Coverage | Yes ☐ | No ☒ |
| Fiduciary Liability Coverage Section | Yes ☐ | No ☒ |
| Voluntary Compliance Program Coverage | Yes ☐ | No ☒ |
| HIPAA Claim Coverage | Yes ☐ | No ☒ |
| Crime and Fidelity Coverage Section | Yes ☐ | No ☒ |

**ITEM 4:  LIMITS OF LIABILITY**

The Limits of Liability of this policy apply solely to the Coverage Section(s) for which a corresponding limit of liability amount is set forth below.

**DECLARATIONS** (continued)                    **POLICY NO.: SISIFNL20068315**

**A.    AGGREGATE LIMIT OF LIABILITY FOR EACH SEPARATE COVERAGE SECTION
        OTHER THAN THE CRIME AND FIDELITY COVERAGE SECTION**

(i)

| Separate Coverage Section: Directors & Officers Liability | $5,000,000 |
|---|---|
| Sublimit of Liability for Derivative Demand Coverage | $150,000 |

(ii)

| Separate Coverage Section: Employment Practices Liability | N/A |
|---|---|
| Sublimit of Liability for Third-Party Liability Coverage | N/A |

(iii)

| Separate Coverage Section: Fiduciary Liability | N/A |
|---|---|
| Sublimit of Liability for Voluntary Compliance Program Coverage | N/A |
| Sublimit of Liability for HIPAA Claim Coverage | N/A |

Each Sublimit of Liability set forth in Item 4 A. above is part of, and not in addition to, the Limit of Liability for the corresponding Separate Coverage Section.

**B.    AGGREGATE LIMIT OF LIABILITY FOR EACH COMBINED COVERAGE SECTION
        OTHER THAN THE CRIME AND FIDELITY COVERAGE SECTION**

(i)

| Combined Coverage Section: Directors & Officers Liability / Employment Practices Liability / Fiduciary Liability | N/A |
|---|---|
| Sublimit of Liability for Derivative Demand Coverage | N/A |
| Sublimit of Liability for Third-Party Liability Coverage | N/A |
| Sublimit of Liability for Voluntary Compliance Program Coverage | N/A |
| Sublimit of Liability for HIPAA Claim Coverage | N/A |

(ii)

| Combined Coverage Section: Directors & Officers Liability / Employment Practices Liability | N/A |
|---|---|
| Sublimit of Liability for Derivative Demand Coverage | N/A |
| Sublimit of Liability for Third-Party Liability Coverage | N/A |

(iii)

| Combined Coverage Section: Directors & Officers Liability / Fiduciary Liability | N/A |
|---|---|
| Sublimit of Liability for Derivative Demand Coverage | N/A |
| Sublimit of Liability for Voluntary Compliance Program Coverage | N/A |
| Sublimit of Liability for HIPAA Claim Coverage | N/A |

(iv)

| Combined Coverage Section: Employment Practices Liability / Fiduciary Liability | N/A |
|---|---|
| Sublimit of Liability for Third-Party Liability Coverage | N/A |
| Sublimit of Liability for Voluntary Compliance Program Coverage | N/A |

CVS FL 12001 PV (1/09)

**DECLARATIONS** (continued)                    **POLICY NO.: SISIFNL20068315**

| Sublimit of Liability for HIPAA Claim Coverage | N/A |
|---|---|

Each Sublimit of Liability set forth in Item 4 B. above is part of, and not in addition to, the Limit of Liability for the corresponding Combined Coverage Section.

The Limits of Liability set forth in Item 4 A. and B. above are the maximum limits of liability for all **Loss** including **Defense Costs,** under the applicable Coverage Section(s).

**C.     AGGREGATE POLICY LIMIT OF LIABILITY**          | $5,000,000 |

The above Limit of Liability set forth in Item 4 C. above is the maximum limit of liability for all **Loss**, including **Defense Costs,** for all Coverage Sections purchased other than the Crime and Fidelity Coverage Section.

**D.     PER OCCURRENCE LIMIT OF LIABILITY- CRIME AND FIDELITY COVERAGE SECTION**

The Limits of Liability of this policy apply solely to the Crime and Fidelity Coverage Section(s) for which a corresponding limit of liability amount is set forth below.

**Crime and Fidelity Coverage Section:**

| (i) | Insuring Agreement A, Employee Theft | N/A |
|---|---|---|
| (ii) | Insuring Agreement B, Forgery or Alteration | N/A |
| (iii) | Insuring Agreement C, Inside the Premises – Loss of Money and Securities | N/A |
| (iv) | Insuring Agreement D, Inside the Premises - Robbery or Safe Burglary of Other Property | N/A |
| (v) | Insuring Agreement E, Outside the Premises | N/A |
| (vi) | Insuring Agreement F, Computer Fraud | N/A |
| (vii) | Insuring Agreement G, Funds Transfer | N/A |
| (viii) | Insuring Agreement H, Money Orders and Counterfeit Money | N/A |
| (ix) | Insuring Agreement I, Credit, Debit, Charge Card Forgery | N/A |
| (x) | Insuring Agreement J, Clients' Property | N/A |
| (xi) | Insuring Agreement K, Investigative Expense Incurred to Establish Amount of Covered Loss | N/A |

**ITEM 5:         RETENTION OR DEDUCTIBLE AMOUNTS**

**RETENTION AMOUNTS**

**A. Directors & Officers Liability Coverage Section:**

| (i)  Insuring Agreement A. | $0 |
|---|---|
| (ii)  Insuring Agreement B. and C. | $500,000 |
| (iii) Insuring Agreement D. | $0 |

**B. Employment Practices Liability Coverage Section:**

| (i)  Insuring Agreement A. - Employment Practices Liability Coverage | N/A |
|---|---|
| (ii)  Insuring Agreement B. - Third-Party Liability Coverage | N/A |

**C. Fiduciary Liability Coverage Section:**

3 of 5

CVS FL 12001 PV (1/09)

**DECLARATIONS** (continued)                         **POLICY NO.: SISIFNL20068315**

| | |
|---|---|
| (i) Insuring Agreement A. - Fiduciary Liability Coverage<br>All Claims, except HIPAA Claims<br>HIPAA Claims | N/A |
| (ii) Insuring Agreement B. - Voluntary Compliance Program Coverage | N/A |

### DEDUCTIBLE AMOUNTS

**D. Crime and Fidelity Coverage Section:**

| | | |
|---|---|---|
| (i) | Insuring Agreement A, Employee Theft | N/A |
| (ii) | Insuring Agreement B, Forgery or Alteration | N/A |
| (iii) | Insuring Agreement C, Inside the Premises – Loss of Money and Securities | N/A |
| (iv) | Insuring Agreement D, Inside the Premises - Robbery or Safe Burglary of Other Property | N/A |
| (v) | Insuring Agreement E, Outside the Premises | N/A |
| (vi) | Insuring Agreement F, Computer Fraud | N/A |
| (vii) | Insuring Agreement G, Funds Transfer | N/A |
| (viii) | Insuring Agreement H, Money Orders and Counterfeit Money | N/A |
| (ix) | Insuring Agreement I, Credit, Debit, Charge Card Forgery | N/A |
| (x) | Insuring Agreement J, Clients' Property | N/A |
| (xi) | Insuring Agreement K, Investigative Expense Incurred to Establish Amount of Covered Loss | N/A |

**ITEM 6:**        **PENDING OR PRIOR DATE**

**A. Directors & Officers Liability Coverage Section:**

| | |
|---|---|
| (i) Insuring Agreement A. | April 01, 2005 |
| (ii) Insuring Agreement B. and C. | April 01, 2005 |

**B. Employment Practices Liability Coverage Section:**

| | |
|---|---|
| (i) Insuring Agreement A - Employment Practices Liability Coverage | N/A |
| (ii) Insuring Agreement B. – Third-Party Liability Coverage | N/A |

**C. Fiduciary Liability Coverage Section:**

| | |
|---|---|
| (i) Fiduciary Liability Coverage | N/A |

**D. Crime and Fidelity Coverage Section:**                    **Not Applicable**

**ITEM 7:**        **PREMIUM**

| | |
|---|---|
| A. Directors & Officers Liability Coverage Section: | $82,500 |
| B. Employment Practices Liability Coverage Section: | N/A |
| C. Fiduciary Liability Coverage Section: | N/A |
| D. Crime and Fidelity Coverage Section: | N/A |
| E. Total Policy Premium: | $82,500 |

**ITEM 8:**        **DISCOVERY PERIOD (APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN CRIME AND FIDELITY)**

        A.     One Year: **75% of the applicable premium**
        B.     Three Years: **100% of the applicable premium**

4 of 5

CVS FL 12001 PV (1/09)

DECLARATIONS (continued)                                POLICY NO.: SISIFNL20068315

Six Years:  **125% of the applicable premium**

ITEM 9:        **ADDRESS OF INSURER AND ITS AUTHORIZED CLAIMS AGENT FOR
               NOTICES UNDER THIS POLICY**

    **A.**   <u>**Claims-Related Notices**</u>

      STARR ADJUSTMENT SERVICES, INC.
      399 PARK AVENUE, 9TH FLOOR
      NEW YORK, NY 10022

      E -mail: <u>StarrFLPLClaims@starrcompanies.com</u>

    **B.**   <u>**All Other Notices To The Insurer:**</u>
      STARR INDEMNITY & LIABILITY COMPANY
      ATTN:  FINANCIAL LINES DEPARTMENT
      399 PARK AVE.  8TH FLOOR
      NEW YORK, NY 10022

In Witness Whereof, the **Insurer** has caused this policy to be executed and attested. This policy shall not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____
**Charles H. Dangelo, President**

_____
**Nehemiah E. Ginsburg, General Counsel**

_____
**Authorized Representative**

CVS FL 12001 PV (1/09)

STARR INDEMNITY AND LIABILITY COMPANY

# RESOLUTE PORTFOLIO<sup>SM</sup>
## For Private Companies

### General Terms & Conditions Section

In consideration of the payment of the premium and in reliance upon the **Application**, as applicable to each Coverage Section, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to this General Terms & Conditions Section and any applicable Coverage Section(s), if purchased by the **Insured** as indicated in Item 3 of the Declarations, **STARR INDEMNITY AND LIABILITY COMPANY** (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

**1.    TERMS & CONDITIONS**

The terms and conditions set forth in this General Terms & Conditions Section shall apply to all applicable Coverage Sections of this policy. The terms appearing in this General Terms & Conditions Section, which are defined in a Coverage Section, shall have the meaning provided for such terms in such Coverage Section for purposes of coverage under such Coverage Section. All defined terms used in this Policy, whether defined in Clause 2, below, or in a Coverage Section, appear in this Policy in boldface and initial-capitalized. The terms and conditions of each Coverage Section apply only to that particular Coverage Section. If any term or condition in this General Terms & Conditions Section is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control.

**2.    GENERAL DEFINITIONS**

(a)    **"Application"** means all signed applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this policy or for any other policy of which this policy is a renewal, replacement or which it succeeds in time. **Application** shall also include, and incorporate, all publicly available documents.

(b)    **"Cleanup Costs"** means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(c)    **"Company"** means:

(1)    the **Parent Company**;

(2)    any **Subsidiary** of the **Parent Company**; and

(3)    the **Parent Company** or any **Subsidiary** as a debtor, a debtor-in-possession or equivalent status;

provided, however, that this Definition (c) (3) shall not apply to the Fiduciary Liability Coverage Section.

(d)     **"Defense Costs"** means:

    (1)     reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

    (2)     premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond;

    (3)     reasonable and necessary fees, costs, charges or expenses incurred in response to any extradition or similar proceeding brought against an **Insured** in connection with a **Claim**; and

    (4)     any fees, costs, charges or expenses incurred by the **Insured** at the specific request of the Insurer to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

**"Defense Costs"** does not include: (i) amounts incurred prior to the date a Claim is first made and reported to the **Insurer**, pursuant to the terms of the applicable Coverage Section; and (ii) compensation or benefits of any **Insured Person** or any overhead expenses of the Company.

(e)     **"Financial Impairment"** means the **Company** becoming a debtor-in-possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**.

(f)     **"Management Control"** means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation; the management committee members of a joint venture; or the **Members** of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(g)     **"Manager"** means a person serving in a directorial capacity for a limited liability company.

(h)     **"Member"** means an owner of a limited liability company represented by its membership interest, who also may serve as a **Manager**.

(i)     **"Parent Company"** means the entity named in Item 1 of the Declarations.

(j)     **"Policy Period"** means the period from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy. If one or more Coverage Sections have different inception, expiration or cancellation dates from those shown in Item 2 of the Declarations, the **Policy Period** for those Coverage Sections shall be set forth in an endorsement to this Policy.

(k)     **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on, any list of hazardous substances issued by the United States Environmental Protection Agency or any foreign, state, county, municipality, or locality counterpart thereof. Such substances shall include, without limitation, nuclear material or waste, any solid, liquid, gaseous or thermal irritant or contaminant, or smoke, vapor, soot, fumes, acids, alkalis,

chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(l) "**Pollution**" means the actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere. **Pollution** also means any **Cleanup Costs**.

3. **LIMITS OF LIABILITY**

The Aggregate Limit of Liability For Each Separate Coverage Section, as set forth in Item 4 A. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for each applicable Separate Coverage Section.

The Aggregate Limit of Liability For Each Combined Coverage Section, as set forth in Item 4 B. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for all of the Coverage Sections that comprise the applicable Combined Coverage Section. Any **Loss** paid under one of the Coverage Sections that comprises a Combined Coverage Section will reduce, and may exhaust, the limit of liability available under the other Coverage Section(s) that comprise(s) such Combined Coverage Section.

Any Sublimit(s) of Liability, whether set forth in Item 4 of the Declarations or as otherwise provided under the terms of this policy, shall be part of, and not in addition to, the applicable Aggregate Limit of Liability set forth in Item 4 A. or 4 B. of the Declarations. Each Sublimit of Liability is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, to which the Sublimit(s) of Liability applies.

The Aggregate Policy Limit of Liability, as set forth in Item 4 C. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for all Coverage Section(s) combined.

If any Aggregate Limit of Liability as set forth in Item 4 A. or 4 B. of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this policy as respects the applicable Coverage Section(s) will be completely fulfilled and the **Insurer** will have no further obligations under this policy of any kind as respects the applicable Coverage Section(s) and the premium as respects the applicable Coverage Section(s) as set forth in Item 7 of the Declarations will be fully earned.

**Any** payment of **Loss** under any Aggregate Limit of Liability as set forth in Item 4 A. or 4 B. of the Declarations shall reduce and may exhaust the Aggregate Policy Limit of Liability as set forth in Item 4 C. of the Declarations. If the Aggregate Policy Limit of Liability is exhausted by the payment of such **Loss**, the **Insurer** will have no further obligations of any kind as respects this policy and the applicable premium set forth in Item 7 of the Declarations will be fully earned.

**Defense Costs** are part of, and not in addition to, the Aggregate Limit of Liability as set forth in Item 4 of the Declarations for each applicable Coverage Section, other than the Crime and

Fidelity Coverage Section, and payment by the **Insurer** of **Defense Costs** shall reduce and may exhaust such Aggregate Limit(s) of Liability. **Defense Costs** are subject to the Aggregate Policy Limit of Liability set forth in Item 4 C. of the Declarations.

If a Discovery Period is purchased by the **Insured** pursuant to Clause 8 of this General Terms & Conditions Section, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limits of Liability as set forth in Item 4 of the Declarations.

The Limit of Liability applicable to the Crime and Fidelity Coverage Section is set forth in Clause 4 of that Coverage Section.

4.    **RETENTION CLAUSE**

Subject to all other terms and conditions of this policy, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount as set forth in Item 5 of the Declarations for each Insuring Agreement of the applicable Coverage Section(s). A single Retention amount shall apply to all **Loss** alleging the same or related **Wrongful Acts**. The Retention amount shall be borne by the **Insureds** and remain uninsured.

The application of a Retention to **Loss** under one Insuring Agreement shall not reduce the Retention that applies to **Loss** under any other Insuring Agreement. If different Retention amounts apply to different parts of a single **Loss**, the applicable Retention shall be applied separately to each part of the **Loss** and the sum of such Retention amounts shall not exceed the largest of the applicable Retention amounts as set forth in Item 5 of the Declarations.

If the **Company** is required or permitted to indemnify an **Insured Person** for any **Loss** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company** and does not do so for any reason, the **Insurer** shall not require payment of the applicable Retention by the **Insured Person**. However, the **Company** hereby agrees to reimburse the **Insurer** for the full amount of such applicable Retention, unless the **Company** is unable to do so because of **Financial Impairment**.

Provided, however that this Clause No. 4, shall not apply to the Crime and Fidelity Coverage Section.

5.    **NOTICE OF CLAIM**

The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice of a **Claim** made against an **Insured** or an **Occurrence**, as applicable under the appropriate Coverage Section, to the **Insurer** at the address set forth in Item 9 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

With respect to the Directors & Officers Liability Coverage Section, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** general counsel or risk manager (or individuals with equivalent responsibilities) becomes aware of the **Claim**; however, in no event shall such notice be provided later than sixty (60) days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

With respect to the Employment Practices Liability Coverage Section and the Fiduciary Liability Coverage Section, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of

a **Claim** made against an **Insured** as soon as practicable after any **Insured Person** becomes aware of the **Claim**; however, in no event shall such notice be provided later than thirty (30) days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if written notice of a **Claim** has been given to the **Insurer** pursuant to this Clause 5, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** pursuant to this Clause 5, alleging, arising out of, based upon or attributable to the facts alleged in the previously noticed **Claim**, or alleging the same or related **Wrongful Act** alleged in the previously noticed **Claim**, shall be considered related to the previously noticed **Claim** and shall be deemed to have been made at the time notice of the previously noticed **Claim** was provided to the **Insurer**.

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if during the **Policy Period** (or Discovery Period, if applicable) an **Insured** becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured**, the **Insured** may provide written notice to the **Insurer's** authorized agent of such circumstances. This written notice shall include the **Wrongful Act** allegations anticipated and the reasons for anticipating a **Claim**, with full particulars as to dates, persons and entities involved. If a **Claim** is subsequently made against such **Insured** and reported to the **Insurer** arising out of, based upon or attributable to the previously noticed circumstances, such **Claim** shall be considered first made at the time notice of such circumstances was provided to the **Insurer**.

6. **DEFENSE OF CLAIM AND SETTLEMENT**

The **Insurer** has the right and duty to defend any **Claim** against any **Insured** covered under this policy, even if such **Claim** is false, fraudulent or groundless; however, the **Insurer** shall not have the right or duty to defend any **Claim** under: (1) Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section; or (2) Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section.

With respect to Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section, the **Company**, and not the **Insurer**, has the duty to investigate and evaluate the **Derivative Demand**. The **Insurer** shall have the right to effectively associate with the **Company** in such process.

With respect to Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section, the **Company**, and not the **Insurer**, has the duty to investigate and evaluate the **Voluntary Compliance Program Loss**. The **Insurer** shall have the right to effectively associate with the **Company** in such process, including the negotiation of any settlement as respects the **Voluntary Compliance Program Loss**.

The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention.

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate. In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled the **Claim**; plus (2) any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus (3) eighty percent (80%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**. However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability as set forth in Item 4 of the Declarations.

The **Insurer** shall pay **Defense Costs** prior to the final disposition of any **Claim**, excess of the applicable retention and subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

7. **ALLOCATION**

In the event the **Insured(s)** incurs **Loss** that is both covered and not covered by this policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured** and the **Insurer** agree to use their best efforts to determine a fair and appropriate allocation between covered and uncovered **Loss** based upon the relative legal and financial exposures of the parties to such matters. In the event of a settlement of such **Claim**, the allocation shall also be based upon the relative benefits to the **Insureds** from such a settlement.

If an allocation of **Loss** cannot be agreed to by the **Insurer** and the **Insured**: (1) the **Insurer** shall pay those amounts which it believes to be fair and equitable until an amount shall be agreed upon or determined pursuant to the provisions of this policy; and (2) there will be no presumption of allocation of **Loss** in any arbitration, suit or other proceeding.

8. **DISCOVERY CLAUSE**

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if the **Company** or the **Insurer** refuses to renew one or more Coverage Sections of this policy, or if this policy is terminated by the **Insurer** for any reason (except for non-payment of premium), or if an **Organizational Change** as defined in Clause 13 occurs, the **Insured(s)** shall have the right to purchase a Discovery Period of up to six years following the effective date of such non-renewal, termination or **Organizational Change**. In the event of the non-renewal of one or more Coverage Sections of this policy, the **Insured** may purchase a Discovery Period solely as respects the Coverage Section(s) that has been non-renewed.

The **Insured's** right to purchase a Discovery Period shall lapse unless written notice of election to purchase such Discovery Period and the additional premium for such Discovery Period is received by the **Insurer** or its authorized agent within sixty days after such non-renewal, termination or **Organizational Change**. The additional premium for a Discovery Period of one or two years is set forth in Item 8 of the Declarations and shall be determined by multiplying the applicable percentage set forth in Item 8 of the Declarations by the premium for each applicable Coverage Section(s) as set forth in Item 7 of the Declarations. The additional premium for a Discovery Period of more than two years shall be determined by the **Insurer**.

During such **Discovery Period**, the **Insured** may provide the **Insurer** with written notice, pursuant to Clause 5 of this policy, of **Claims** made against an **Insured** solely with respect to

**Wrongful Acts** occurring prior to the effective date of the non-renewal or termination of the policy or the effective date of the **Organizational Change** and otherwise covered by this policy.

The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limits of Liability set forth in Item 4 of the Declarations.

The Discovery Period premium shall be fully earned at the inception of the Discovery Period. The Discovery Period is non-cancellable.

9. **OTHER INSURANCE**

The insurance provided by this policy shall apply only as excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. This policy shall not be subject to the terms and conditions of any other insurance policy.

In connection with any covered **Claim** made against an **Outside Entity Insured Person**, a leased employee, or an **Independent Contractor**, and subject to all other terms and conditions herein, this policy shall apply specifically excess of any indemnification and any other insurance coverage available to an **Outside Entity Insured Person**, a leased employee or an **Independent Contractor**. In the event such other insurance coverage available to an **Outside Entity Insured Person**, a leased employee or an **Independent Contractor** is provided by the **Insurer** (or would be provided except for the application of any retention, exhaustion of a limit of liability or failure to submit notice of a claim) then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in whole or in part, by this policy and such other insurance policy, shall be the greater of (1) the Limit of Liability of the applicable Coverage Section(s) of this policy; or (2) the limit of liability of such other insurance policy.

10. **REPRESENTATIONS AND SEVERABILITY**

It is agreed that the **Insurer** has relied upon the information contained in the **Application**, as applicable to each Coverage Section, in issuing this policy. In regard to the statements, warranties, representations and information contained in the **Application**, no knowledge of any **Insured** shall be imputed to any other **Insured** for the purpose of determining whether coverage is available under this policy for any **Claim** made against such **Insured**. However, the knowledge possessed by any **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

11. **COVERAGE EXTENSIONS**

This policy shall cover **Loss** arising from any **Claims** made against the estates, heirs, or legal representatives of any deceased person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such estates, heirs, or legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

This policy shall also cover **Loss** arising from any **Claims** made against the legal representatives of any incompetent, insolvent or bankrupt person who was an **Insured Person**

at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

This policy shall also cover **Loss** arising from any **Claims** made against the lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world or any formal program established by the

**Company**) of an **Insured Person** for all **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of the spouse or domestic partner, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

The coverage extensions set forth in this Clause 11 are subject to all other terms and conditions of this policy.

## 12. CANCELLATION AND NON RENEWAL CLAUSE

This policy, or any applicable Coverage Section(s), may be cancelled by the **Parent Company** by sending written prior notice to the **Insurer** or its authorized agent as set forth in Item 9 of the Declarations stating when thereafter the cancellation of the policy, or the applicable Coverage Section(s), shall be effective. The policy, or the applicable Coverage Section(s), terminates at the date and hour specified in such notice. This policy may also be cancelled by the **Parent Company** by surrender of this policy to the **Insurer** or its authorized agent as set forth in Item 9 of the Declarations. The policy terminates as of the date and time of surrender. The **Insurer** shall retain the customary short rate proportion of the premium, unless stated otherwise herein.

This policy, or any applicable Coverage Section(s), shall not be cancelled by or on behalf of the **Insurer** except by reason of non-payment of the premium set forth in Item 7 of the Declarations. The **Insurer** may cancel the policy by delivering to the **Parent Company** or by mailing to the **Parent Company**, by registered mail, or by courier at the **Parent Company's** address set forth in the Declarations, written notice stating when, not less than twenty (20) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Parent Company**.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

The **Insurer** shall have no obligation to renew this policy or any applicable Coverage Section. In the event the **Insurer** decides to non-renew this policy or any applicable Coverage Section, it shall deliver or mail to the **Parent Company**, as identified in Item 1 of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**.

13. **ORGANIZATIONAL CHANGES**

If during the **Policy Period**:

(1)    the **Parent Company** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2)    any person or entity or group of persons or entities acting in concert shall acquire more than 50% of the **Parent Company**,

(any events described in (1) or (2) are referred to herein as an **"Organizational Change"**) then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of an **Organizational Change**. However, there shall be no coverage afforded by this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Organizational Change**. This policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective time of the **Organizational Change**. The **Insured(s)** shall also have the right to purchase a Discovery Period described in Clause 8 in the event of an **Organizational Change**.

The **Parent Company** shall give the **Insurer** written notice of the **Organizational Change** as soon as practicable, but no later than thirty days after the effective date of the **Organizational Change**.

14. **AUTHORIZATION AND NOTICES**

**The Parent Company** shall act on behalf of all **Insureds** with respect to all matters as respects this policy including: (1) giving of notice of **Claim**; (2) giving and receiving of all correspondence and information; (3) giving and receiving notice of cancellation; (4) payment of premiums; (5) receiving of any return premiums; (6) receiving and accepting of any endorsements issued to form a part of this policy; and (7) the exercising of any right to a Discovery Period.

15. **VALUATION AND CURRENCY**

All amounts stated in this policy are expressed in United States dollars and all amounts payable under this policy are payable in United States dollars. If a judgment rendered or settlement entered into under this policy are stated in a currency other than United States dollars, then payment under this policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the final judgment is rendered or the settlement payment is established.

16. **TERRITORY**

This policy extends to **Wrongful Acts** taking place, **Occurrences**, or **Claims** made anywhere in the world to the extent permitted by law.

17. **ASSIGNMENT AND CHANGES TO THE POLICY**

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

Notice to any agent or knowledge possessed by any agent or person acting on behalf of the **Insurer**, other than the **Insurer's** authorized agent as identified in Item 9 of the Declarations, will not result in a waiver or change in any part of this policy or prevent the **Insurer** from

asserting any right under the terms and conditions of this policy. The terms and conditions of this policy may only be waived or changed by written endorsement signed by the **Insurer** or its authorized agent.

## 18.    BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations hereunder.

It is understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding involving the **Company** is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** shall:

a.    waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the policy or its proceeds under such Bankruptcy Law; and

b.    agree not to oppose or object to any efforts by the **Company**, the **Insurer** or any **Insured Person** to obtain relief from any such stay or injunction.

In the event the **Company** becomes a debtor-in-possession or equivalent status under such Bankruptcy Law, and the total covered **Loss** under this policy exceeds the available applicable Limit of Liability, the **Insurer** shall:

a.    first pay the **Loss** allocable to **Wrongful Acts** that are actually or allegedly caused, committed, or attempted prior to the **Company** becoming a debtor-in-possession or some equivalent status, then

b.    pay any remaining **Loss** allocable to **Wrongful Acts** that are actually or allegedly caused, committed, or attempted after the **Company** became a debtor-in-possession or some equivalent status.

## 19.    SUBROGATION

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured(s)'** rights of recovery. The **Insured(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.

## 20.    ACTION AGAINST THE INSURER

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this policy and the amount of the **Insured's** obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Insurer** be impleaded by such **Insured** or legal representatives of such **Insured**.

21.  **CONFORMITY TO STATUTE**

Any terms of this policy which are in conflict with the terms of any applicable laws construing this policy, including any endorsement to this policy which is required by any state Department of Insurance, or equivalent authority ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement.

In the event any portion of this policy shall be declared or deemed invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of any other portion of this policy.

22.  **HEADINGS**

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of this policy's terms or conditions.

**STARR INDEMNITY AND LIABILITY COMPANY**

---

## RESOLUTE PORTFOLIO℠
### For Private Companies

### *Directors & Officers Liability Coverage Section*

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to the General Terms & Conditions Section and this Coverage Section, if purchased by the **Insured** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

1. **INSURING AGREEMENTS**

   **A.** The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, except if the **Company** has indemnified the **Insured Person** for such **Loss**.

   **B.** The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, if the **Company** has indemnified the **Insured Person** for such **Loss**.

   **C.** The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

   **D.** The **Insurer** shall reimburse the **Company** for the **Derivative Costs** incurred by the **Company** in response to a **Derivative Demand** first made during the **Policy Period** (or Discovery Period, if applicable) for any **Wrongful Act** of any **Executive**, and reported to the **Insurer** in accordance with the terms of this policy. This Insuring Agreement D. shall apply only if purchased by the **Insured** as indicated in Item 3 of the Declarations and is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement D. for all **Derivative Costs** arising from all **Derivative Demands**. The Sublimit of Liability for **Derivative Costs** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section. This Insuring Agreement D. shall not provide coverage for any civil proceeding that is based upon or arises from a **Derivative Demand**.

2. **DEFINITIONS**

   (a) **"Claim"** means any:

       (1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

       (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

           (i)     service of a complaint or similar pleading;

1

      (ii)     return of an indictment, information or similar document (in the case of a criminal proceeding); or

      (iii)    receipt or filing of a notice of charges;

(3) arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4) formal civil, criminal, administrative or regulatory investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in (2) or (3) above may be commenced;

(5) written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**; or

(6) **Derivative Demand**, solely under Insuring Agreement D. if purchased by the **Insured**.

(b) **"Derivative Costs"** means the reasonable and necessary fees, costs, charges, or expenses incurred by the **Company**, its board of directors or any committee of its board of directors, solely in response to a **Derivative Demand** and do not include any settlements, judgments or damages, nor any compensation or benefits of any **Insured Persons**, or any overhead expenses of the **Company**. **Derivative Costs** shall be reimbursed by the **Insurer** sixty (60) days after the **Company** provides written notice to the **Insurer** of its final decision not to bring a civil proceeding against an **Executive**.

(c) **"Derivative Demand"** means a written demand by one or more shareholders of the **Company** upon the **Company's** board of directors to bring a civil proceeding on behalf of the **Company** against any **Executive** for a **Wrongful Act**.

(d) **"Employee"** means:

    (1) any person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in the capacity as such;

    (2) any person leased to the **Company** so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person in the same manner as the **Company's** employees; and

    (3) any volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

(e) **"Executive"** means any:

    (1) past, present or future duly elected or appointed director, officer, trustee, governor, management committee **Member** or **Member** of the board of managers;

    (2) past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in item (1) above; or

    (3) past, present or future general counsel and risk manager (or equivalent position) of the **Company**.

(f) **"Insured"** means the **Company** and any **Insured Person**.

(g) **"Insured Person(s)"** means any:

    (1)  **Executive;**

    (2)  **Employee;** or

    (3)  **Outside Entity Insured Person.**

(h) **"Loss"** means:

    (1)  damages, settlements or judgments;

    (2)  pre-judgment or post-judgment interest;

    (3)  costs or fees awarded in favor of the claimant;

    (4)  punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5)  **Derivative Costs**, solely under Insuring Agreement D. if purchased by the **Insured**; and

    (6)  **Defense Costs**.

**"Loss"** does not include:

    (i)  any amounts for which the **Insureds** are not legally liable;

    (ii)  any amounts which are without legal recourse to the **Insureds**;

    (iii)  taxes;

    (iv)  fines and penalties, except as provided for in Definition (h) (4) above;

    (v)  matters which may be deemed uninsurable under applicable law; or

    (vi)  any amounts paid or incurred in complying with a judgment or settlement for non-monetary or injunctive relief, but solely as respects the **Company**.

(i) **"Outside Entity"** means: (1) any not-for-profit entity which is exempt from taxation under Section 501(c)(3), (4) or (10) of the IRS Code, as amended, or any rule or regulation promulgated thereunder; or (2) any other entity listed as such by endorsement to this policy, for which an **Executive** acts as a director, officer, trustee or governor (or the equivalent thereof) at the written request of the **Company.** Any such person shall be referred to herein as an **"Outside Entity Insured Person"**, but only while that person is acting in the capacity as a director, officer, trustee or governor (or the equivalent thereof) of an **Outside Entity**.

(j) **"Securities Claim"** means a **Claim,** other than an administrative or regulatory proceeding against the **Company** or an investigation of the **Company**, made against any **Insured**:

    (1)  alleging a violation of any foreign, federal, state or local regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

3

      (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**; or

      (ii) brought by a security holder of the **Company** with respect to such security holder's interest in securities of such **Company**; or

  (2)   brought derivatively on behalf of the **Company** by a security holder of such **Company**.

Notwithstanding the foregoing, **Securities Claim** shall include any formal administrative or regulatory proceeding against the **Company**, but only if and only during the time that such proceeding also constitutes a **Securities Claim** commenced and continuously maintained against an **Insured Person**.

The **Insurer** shall not assert that a **Loss** incurred in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and, subject to all other terms and conditions of this policy, shall deem that portion of such **Loss** as constituting **Loss** under this policy.

(k)   **"Subsidiary"** means any privately-held for-profit entity (except a partnership) of which the **Parent Company**:

  (1)   has **Management Control** ("Controlled Entity") before the inception of the **Policy Period,** either directly or indirectly through one or more other Controlled Entities;

  (2)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals less than 25% of the consolidated revenue of the **Parent Company** as of its latest fiscal year; or

  (3)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals 25% or more of the consolidated revenue of the **Parent Company** as of its latest fiscal year, but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**;

provided, however, that **Subsidiary** as defined in items (2) and (3) above shall not mean any entity which is a financial institution, including but not limited to a bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

**"Subsidiary"** also means any not-for-profit entity which is under the exclusive control of the **Company**.

With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(l)   **"Wrongful Act(s)"** means:

  (1)   with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured**

**Person** in his or her capacity as such or any matter claimed against an **Insured Person** by reason of such capacity;

(2) with respect to an **Outside Entity Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by a person in his or her capacity as an **Outside Entity Insured Person** or any matter claimed against such **Outside Entity Insured Person** by reason of such capacity; or

(3) with respect to the **Company,** any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**.

## 3. EXCLUSIONS

This policy shall not cover any **Loss** in connection with any **Claim**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

(b) arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred;

(c) arising out of, based upon or attributable to the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final judgment or adjudication establishes that a violation of Section 16(b) occurred;

In determining the applicability of Exclusions (a), (b) and (c), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

(d) alleging, arising out of, based upon or attributable to any facts or circumstances of which an **Insured Person** had actual knowledge or information of, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, and that he or she reasonably believed may give rise to a **Claim** under this policy;

(e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(f) alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(g)    alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

(h)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or an **Outside Entity Insured Person:**

(i)    brought by or on behalf of any **Insured**, other than an **Employee**; provided, however, that this exclusion shall not apply to:

    (i)    any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

    (ii)    a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured**;

    (iii)    any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**, for at least three (3) years prior to the **Claim** being first made;

    (iv)    any **Claim** brought against an **Insured Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

    (v)    any **Claim** brought by any **Executive** of a **Company** formed and operating in a foreign jurisdiction against such **Company** and any **Insured Person** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

    (vi)    any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Company** or any assignee of such trustee, examiner, receiver or similar official.

(j)    alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**; provided, however, that this exclusion shall not apply to any **Claim** under Insuring Agreement A. or any **Securities Claim**, except for **Loss** constituting **Cleanup Costs**;

(k)    alleging, arising out of, based upon or attributable to any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law;

(l)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly any public offering of securities by the **Company** or an **Outside Entity**, or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, that this exclusion shall not apply to:

(i)     any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall be conditioned solely upon the **Company** giving the **Insurer** written notice of any such public offering, including all details thereof, as soon as practicable, but not later than thirty days after the effective date of such offering; or

(ii)     any public offering of securities, other than an offering described in paragraph (i) above, as well as any purchase or sale of securities subsequent to such public offering. Coverage for such transaction shall be conditioned upon, within thirty days prior to the effective time of such public offering, the **Company**: (a) giving the **Insurer** written notice of such offering, including all details thereof, and any underwriting information required by the **Insurer**; and (b) accepting such terms, conditions and additional premium required by the **Insurer** for such coverage. Coverage provided pursuant to this paragraph is also subject to the **Company** paying such additional premium when due. The **Insurer** shall provide the **Company** with a quote for such coverage if the **Company** gives written notice of the offering as required in this paragraph.

(m)     for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; or which is brought by any securities holder of the **Outside Entity**, whether directly or derivatively, unless such securities holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Outside Entity**, any director, officer, trustee or governor thereof, an **Executive** or the **Company**; provided, however, that this exclusion shall not apply to:

(i)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

(ii)     any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Outside Entity** or any assignee of such trustee, examiner, receiver or similar official;

(iii)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** who has not served in such capacity, nor acted as a consultant to the **Outside Entity**, for at least three (3) years prior to such **Claim** being first made; or

(iv)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity**, formed and operating in a foreign jurisdiction against any **Outside Entity Insured Person** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(n)     for bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, violation of any right of privacy, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to any **Securities Claim**;

(o)     alleging, arising out of, based upon, or attributable to any actual or alleged: (i) violation of the Foreign Corrupt Practices Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; (ii) payments, commissions, gratuities, benefits or

7

other favors for the direct or indirect benefit of any officials, directors, agents, partners, representatives, principal shareholders, or owners of the **Company** or employees of any customers of the **Company;** or (iii) political contributions;

(p)    alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim, including but not limited to any wage-hour claim or any third-party discrimination or harassment claim; provided, however, that this exclusion shall not apply to any **Securities Claim;**

(q)    alleging, arising out of, based upon, or attributable to the ownership, management, maintenance, operation and/or control by the **Company** of any captive insurance company or entity, including but not limited to any **Claim** alleging the insolvency or bankruptcy of the **Company** as a result of such ownership, management, maintenance, operation and/or control;

(r)    alleging, arising out of, based upon, or attributable to based upon, arising from, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(s)    alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**; provided, however, that this exclusion shall not apply to any **Securities Claim**, but only if such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Company** or any **Insured Person**.

## 4.  ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Coverage Section, the **Insurer** shall in all events:

(1)  first, pay **Loss** for which coverage is provided under this Coverage Section for any **Insured Person** under Insuring Agreement A.;

(2)  second, only after payment of **Loss** has been made pursuant to item (1) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for the **Company** under Insuring Agreement B.; and

(3)  third, only after payment of **Loss** has been made pursuant to items (1) and (2) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for the **Company** under Insuring Agreement C. and D.

## 5.  NON-RESCINDABLE CLAUSE

The **Insurer** irrevocably waives any right it may have to rescind coverage available under Insuring Agreement **A.** of this Coverage Section, in whole or in part, on any grounds.

8

Endorsement No.: 1
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

**OFAC EXCLUSION**

It is understood and agreed that Clause 1., TERMS AND CONDITIONS, is amended by adding the following exclusion:

OFAC EXCLUSION

This policy shall not cover any loss in connection with any Claim in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations, including but not limited to the U.S. Treasury Department's Office of Foreign Assets Control, or any similar foreign, federal, state or statutory law or common law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10301 EX (10/08)

Endorsement No.: 2
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## FULL NUCLEAR EXCLUSION
### (D&O Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is amended by adding the following exclusion:

This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to nuclear fission, nuclear fusion, radioactive contamination or the hazardous properties of any nuclear materials.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Authorized Representative**

CVS FL 10175 PPV (07/08)

Endorsement No.: 3
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## RELIANCE ENDORSEMENT
### (other applications)

In granting coverage under this Policy, it is understood and agreed that the Insurer has relied upon the statements, representations and warranties contained in all applications, warranty statements, together with attachments and any other materials submitted for this Policy (including all such previous policy applications, and their attachments and materials, for which this Policy is a renewal or succeeds in time), as being accurate and complete. It is further understood and agreed that the Insureds warrant and represent to the Insurer that the statements, representations and warranties made in such application(s) were accurate on the date such statements and representations were so given. All such statements and representations in such application(s) are the basis of this Policy and are to be considered as incorporated into this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Authorized Representative**

CVS FL 10305 EX (10/08)

Endorsement No.: 4
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the RESOLUTE PORTFOLIO FOR
PRIVATE COMPANIES INSURANCE POLICY.
COVERAGE PART: DIRECTORS AND OFFICERS LIABILITY COVERAGE SECTION

It is understood and agreed:

A. Paragraph (h) of Clause **2. DEFINITIONS** is amended by deleting "(2) pre-judgment or post-judgment
   interest;".

B. Clause **3. EXCLUSIONS** is amended by the addition of the following:

   Notwithstanding the foregoing, in Illinois, paragraph (j) may not apply to damage caused by heat,
   smoke or fumes from a hostile fire. In no way shall this statement be construed as affording coverage
   not otherwise provided by this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


_____
            **Authorized Representative**


CVS FL 10411 PV (11/08)

Endorsement No.: 5
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## PARENT EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the applicable Coverage Section(s) listed below is amended by adding the following exclusion:

This policy shall not cover any **Loss** in connection with any **Claim** brought by or on behalf of:

(i)    *Astellas Pharma Inc.* or any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors is owned or controlled, directly or indirectly, by such organization;

(ii)    any past, present or future director, officer or employee of any organization included in (i) above; or

(iii)    any past, present or future securities holder or class of securities holders of any organization included in (i) above.

It is further understood and agreed that this exclusion shall apply only to the following Coverage Section(s):

*Directors & Officers Liability*

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10738 P (03/10)

Endorsement No.: 6
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## STATE AMENDATORY INCONSISTENCY

It is understood and agreed that the Clause 1. Terms and Conditions is amended by adding the following:

It is understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this policy and any other term or condition of this policy, then where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory or the policy which are more favorable to the **Insured**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10678 EX (02/10)

Endorsement No.: 7
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND DEFINITION OF COMPANY
### (General Terms & Conditions)

It is understood and agreed that Definition (c), **"Company"**, of the General Terms & Conditions Section is amended to include the following:

Associate Director and above, pursuant to Article VI of the Articles of Incorporation

Astellas Research Institute of America

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10187 PPV (07/08)

Endorsement No.: 8
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## 100% ALLOCATION DEFENSE COSTS

I. It is understood and agreed that Clause 7. ALLOCATION of the General Terms & Conditions
Section is deleted and replaced by the following:

### 7. ALLOCATION

(a) If both **Loss** covered under this policy and loss not covered under this policy
are incurred by the **Insureds** on account of any **Claim** because such **Claim**
against the **Insureds** includes both covered and non-covered matters and/or
parties, then coverage under this Coverage Section with respect to such **Claim**
shall apply as follows:
   (i) **Defense Costs**: One hundred percent (100%) of reasonable and
   necessary **Defense Costs** incurred by the **Insured** on account of such
   **Claim** will be considered covered **Loss**; and
   (ii) **Loss** other than **Defense Costs**: All remaining loss incurred by the
   **Insured** on account of such **Claim** shall be allocated by the **Insurer**
   between covered **Loss** and non-covered loss based on the relative legal
   and financial exposures of the parties to such matters and, in the event of
   a settlement in such **Claim**, also based on the relative benefits to the
   **Insureds** from such settlement.

(b) If an allocation of **Loss** cannot be agreed to by the **Insurer** and the **Insured**:
(i) the **Insurer** shall pay those amounts which it believes to be fair and equitable
until an amount shall be agreed upon or determined pursuant to the provisions of
this policy; and
(ii) there will be no presumption of allocation of **Loss** in any arbitration, suit or
other proceeding.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10837 PPVNP (4/10)

Endorsement No.: 9
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

**AMEND NOTICE CLAUSE:**
**NAMED EXECUTIVES BECOME AWARE OF CLAIM**
**& AMEND POST POLICY REPORTING**
(General Terms & Conditions Section)

It is understood and agreed that Clause 5. NOTICE OF CLAIM of the General Terms & Conditions Section is amended by deleting the third paragraph thereof and replacing it with the following:

With respect to the Directors & Officers Liability Coverage, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of a **Claim** made against an **Insured** as soon as practicable after the **Company's Senior VP of Finance** (or individuals with equivalent responsibilities) becomes aware of the **Claim**; however, in no event shall such notice be provided later than 90 days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10187 PPV (07/08)

Endorsement No.: 10
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND REPRESENTATIONS AND SEVERABILITY:
## IMPUTATION TO COMPANY CEO & CFO ONLY

It is understood and agreed that Clause 10, REPRESENTATIONS AND SEVERABILITY, of the General Terms & Conditions Section is deleted in its entirety and replaced by the following:

### 10. REPRESENTATIONS AND SEVERABILITY

It is agreed that the **Insurer** has relied upon the information contained in the **Application**, as applicable to each Coverage Section, in issuing this policy. In regard to the statements, warranties, representations and information contained in the **Application**, no knowledge of any **Insured** shall be imputed to any other **Insured** for the purpose of determining whether coverage is available under this policy for any **Claim** made against such **Insured**. However, the knowledge possessed by any **Insured Person** who is a past or current chief executive officer or chief financial officer of the **Company** shall be imputed to the **Company**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10187 PPV (07/08)

Endorsement No.: 11
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND DEFINITION OF "OUTSIDE ENTITY" – INCLUDES ANY NOT-FOR-PROFIT ENTITY
### (Directors & Officers Liability Coverage Section)

It is understood and agreed that Definition (i) **"Outside Entity"**, in Clause 2. DEFINITIONS of the Directors & Officers Liability Coverage Section is deleted in its entirety and replaced with the following:

(i)      **"Outside Entity"** means: (1) any not-for-profit entity; or (2) any other entity listed as such by endorsement to this policy, for which an **Executive** acts as a director, officer, trustee or governor (or the equivalent thereof) at the written request of the **Company.** Any such person shall be referred to herein as an **"Outside Entity Insured Person"**, but only while that person is acting in the capacity as a director, officer, trustee or governor (or the equivalent thereof) of an **Outside Entity**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10187 PPV (07/08)

Endorsement No.: 12
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND DEFENSE OF CLAIM AND SETTLEMENT CLAUSE – CONVERT TO INSURED DEFENSE OBLIGATION & DELETE HAMMER
### (General Terms & Conditions Section)

It is understood and agreed that Clause 6, DEFENSE OF CLAIM AND SETTLEMENT, of the General Terms & Conditions Section is deleted in its entirety and replaced with the following:

**6.      DEFENSE OF CLAIM AND SETTLEMENT**

The **Insurer** does not assume any duty to defend any **Claim.** However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim.**

The **Insured(s)** shall defend and contest any **Claim** made against them. The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** as respects any **Claim**, such consent shall not be unreasonably withheld.

With respect to Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section, the **Company,** and not the **Insurer**, has the duty to investigate and evaluate the **Derivative Demand.** The **Insurer** shall have the right to effectively associate with the **Company** in such process.

With respect to Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section, the **Company**, and not the **Insurer**, has the duty to investigate and evaluate the **Voluntary Compliance Program Loss.** The **Insurer** shall have the right to effectively associate with the **Company** in such process, including the negotiation of any settlement as respects the **Voluntary Compliance Program Loss.**

The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention.

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.

CVS FL Manuscript PV (5/11)

1

The **Insurer** shall pay **Defense Costs** prior to the final disposition of any **Claim**, excess of the applicable retention and subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

2

Endorsement No.: 13
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## DELETE EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability
Coverage Section is amended by deleting Professional Service Exclusion (s).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10000 PPVNP (07/08)

Endorsement No.: 14
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

### AMEND DEFINITION OF LOSS – FCPA PENALTIES INSURED PERSONS
(Directors & Officers Liability Coverage Section)

It is understood and agreed that the Directors & Officers Liability Coverage Section is amended as follows:

1. Paragraph (4) of Clause 2. DEFINITIONS (h) **"Loss"** is amended by deleting it in its entirety and replacing it with the following:

    (4) punitive, exemplary or the multiplied portion of any multiple damages awards, and civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act 15 U.S.C.78dd-2(g)(2)(B), but only to the extent that such damages and civil penalties are insurable under the applicable law most favorable to the insurability of such damages and civil penalties;

2. Clause 3. EXCLUSIONS (o) is amended by adding the following at the end:

    provided, however, that this exclusion will not apply solely to the extent of the coverage provided by Paragraph (4) of Clause 2. DEFINITIONS (h) **"Loss"** as set forth above;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10963 PV (08/10)

Endorsement No.: 15
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND DEFINITION OF SUBSIDIARY – ADD NEW ENTITY(IES) PRIOR WRONGFUL ACTS DATE

(Directors and Officer Coverage Section and DECLARATIONS)

1.    Clause 2., DEFINITIONS, **"Subsidiary"** of the Directors and Officers Coverage Section shall be amended by adding the following:

> **"Subsidiary"** shall also mean: OSI Pharmaceuticals Inc.

2.    Provided, however, in respect of the coverage provided under this endorsement for the entity(ies) added to the definition of **Subsidiary** in Paragraph 1. above, this Policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act(s)** committed, attempted, or allegedly committed or attempted in whole, or in part, prior to *(June 03, 2010)*.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Authorized Representative**

CVS FL  Manuscript PPV (05/11)                    1

Endorsement No.: 16
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND DEFINITION OF "EMPLOYEE" – ADD INDEPENDENT CONTRACTORS AMEND LEASED EMPLOYEE
(Directors & Officers Liability Coverage Section)

It is understood and agreed that:

1.  Definition (d) "**Employee**" in Clause 2. DEFINITIONS of the Directors & Officers Liability Coverage Section is deleted in its entirety and replaced by the following:

    d)  "**Employee**" means:

    (1)  any person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in the capacity as such;

    (2)  any person leased to the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person in the same manner as the **Company's** employees;

    (3)  any volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such; and

    (4)  any **Independent Contractor**.

2.  For the purposes of the coverage provided under this endorsement only, "**Independent Contractor**" means any person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company** which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

_____
**Authorized Representative**

CVS FL 10866 PV (05/10)

Endorsement No.: 17
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

### AMEND DEFINITION OF SECURITIES CLAIM – SECTION 15 CLAIMS
(Directors & Officers Liability Coverage Section)

It is understood and agreed that the last paragraph of Clause 2. DEFINITIONS (j) **Securities Claim** of the Directors & Officers Liability Coverage Section is deleted in its entirety and replaced by the following:

The **Insurer** shall not assert that a **Loss** incurred in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, constitutes uninsurable loss and, subject to all other terms and conditions of this policy, shall deem that portion of such **Loss** as constituting **Loss** under this policy; provided, however, in respect of Section 15 the foregoing shall only apply to the private placements of securities.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL 10964 PV (08/10)

Endorsement No.: 18
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## AMEND EXCLUSION (a) – ADD "FINANCIAL"

It is understood and agreed that Clause 3. EXCLUSIONS (a) is deleted in its entirety and replaced with the following:

(a)     arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


_____
**Authorized Representative**

Endorsement No.: 19
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## Amend Conduct Exclusions- Action by Insurer

In consideration of the premium charged, it is hereby understood and agreed that Exclusions (a), (b), and (c) of Clause 3. EXCLUSIONS of the Directors & Officers Liability Coverage Section are hereby deleted in their entirety and replaced by the following:

(a)     arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration if a final non-appealable adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such remuneration was improper or illegal;

(b)     arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an **Insured** if a final non-appealable adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such act or violation occurred;

(c)     arising out of, based upon or attributable to the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final non-appealable adjudication in an action or proceeding other than an action or proceeding initiated by the Insurer to determine coverage under the policy establishes that a violation of Section 16(b) occurred;

In determining the applicability of Exclusions (a), (b) and (c), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed or any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Authorized Representative**

CVS FL 10714 PV (2/10)

Endorsement No.: 20
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

**AMEND DEFINITION OF "OUTSIDE ENTITY" –
ADD SPECIFIED ENTITIES
(Directors & Officers Liability Coverage Section)**

It is understood and agreed that Clause 2 DEFINITIONS (i) **"Outside Entity"** of the Directors & Officers Liability Coverage Section is amended by adding the following:

    (i)    **"Outside Entity"** shall also mean the following entities:
          a)   Tacurion Pharma Inc. & Mitokyne, Inc.
    (ii)   **"Outside Entity Insured Person"** shall also mean the following persons:
          a)   Sakae Asanuma

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

                                                          **AUTHORIZED REPRESENTATIVE**

CVS FL Manuscript (06/11)

Endorsement No.: 21
This endorsement, effective: April 01, 2015
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: SISIFNL20068315
Issued to: Astellas US Holding, Inc.
By: Starr Indemnity & Liability Company

## RETENTION EROSION DIC OR SIDE A PAYMENT
(General Terms & Conditions Section)

It is understood and agreed that Clause 4. RETENTION CLAUSE in the General Terms & Conditions Section is amended by adding the following:

> The **Insurer** will recognize the payment of any applicable Retention amount by an insurer providing directors & officers or management liability differences-in-condition or non-indemnifiable loss coverage to any **Insured** as satisfying the **Insured's** responsibility for same under the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

CVS FL MANUSCRIPT P (03/14)

# Exhibit B



**DECLARATIONS**

**EXCESS INSURANCE POLICY**

**SUBJECT TO ALL OF THE TERMS, CONDITIONS AND LIMITATIONS OF THE FOLLOWED POLICY, THIS POLICY MAY ONLY APPLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD PROVIDED THAT SUCH CLAIM IS REPORTED IN WRITING TO THE UNDERWRITERS PURSUANT TO THE POLICY PROVISIONS. AMOUNTS INCURRED AS COSTS AND EXPENSES INCURRED IN THE DEFENSE OR SETTLEMENT OF CLAIMS SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE UNDERWRITERS SHALL NOT BE LIABLE FOR ANY AMOUNTS AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the Policy with endorsements shall constitute the contract between the **Insureds** and the Underwriters.

Undewriters:      Beazley Insurance Company, Inc.

Policy Number:      V15357150201

Item 1.      **Named Insured:**

Astellas US Holding, Inc.

Principal Address:

1 Astellas Way
Northbrook, IL 60062

Item 2.      **Policy Period:**

From:      01-Apr-2015

To:      01-Apr-2016

Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3.      **Limit of Liability:**

$5,000,000      Each claim, including costs and expenses incurred in the defense or settlement of such claim.

$5,000,000      Aggregate for the **Policy Period**, including costs and expenses incurred in the defense or settlement of all claims.

Item 4.      **Premium:**

$42,900

Item 5.      Notification under this Policy:

a.      Notification pursuant to Clause VI. shall be given to:

b.      All other notices under this Policy shall be given to:

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, CT 060321
Tel: (860) 677-3700
Fax: (860) 679-0247
or claims@beazley.com

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, CT 060321
Tel: (860) 677-3700
Fax: (860) 679-0247
or claims@beazley.com

**Item 6.**        **Followed Policy**:

Insurer:            Starr Indemnity & Liability Company

Policy No.:        SISIFNL20068315

Limit of Liability: $5,000,000

Retention:         $0/$500,000

**Item 7.**        **Underlying Insurance**: N/A

**Item 8.**        Endorsements Effective at Inception:

| | | |
|---|---|---|
| 1. | A01051IL 022014 ed. | Illinois Amendatory Endorsement |
| 2. | BICMU00011106IL | Policyholder Notice - Illinois |
| 3. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 4. | E05164 112013 ed. | Follow Form Pending and Prior Litigation/Claim Exclusion - with Amended Date |
| 5. | E05181 112013 ed. | Specific Investigation/Claim/Litigation Event or Act Exclusion |

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____
Authorized Representative

07-Apr-2015
_____
Date

_____
Secretary

_____
President

**Effective date of this Endorsement: 01-Apr-2015**
**This Endorsement is attached to and forms a part of Policy Number: V15357150201**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS INSURANCE POLICY**

1.      This Policy is amended further by adding the following Clause **VII. CANCELLATION AND NONRENEWAL** as follows:

**VII. CANCELLATION AND NONRENEWAL**

A.   The **Named Insured** may cancel this Policy by surrender thereof to the Insurer, or by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

B.   If this Policy has been in effect for sixty (60) days or less and is not a renewal Policy, the Insurer may cancel this Policy for any reason by mailing to the **Named Insured** written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.

If this Policy has been in effect for at least sixty-one (61) days or is a renewal Policy, the Insurer may cancel this Policy only for any of the following reasons:

1.      nonpayment of premium;
2.      the Policy was obtained through a material misrepresentation;
3.      any **Insured** violated any of the terms and conditions of this Policy;
4.      the risk originally insured has measurably increased;
5.      certification to the Illinois Director of Insurance of the loss of reinsurance by the Insurer for all or a substantial part of the underlying risk insured; or
6.      a determination by the Director that the continuation of this Policy could place the Insurer in violation of the insurance laws of Illinois.

If the Insurer cancels this Policy for any of the reasons set forth in 2. through 6. above, the Insurer shall mail sixty (60) days' advance written notice of cancellation to the **Named Insured**. If the Insurer cancels this Policy for nonpayment of premium, the Insurer shall mail written notice to the **Named Insured** stating when, not less than ten (10) days thereafter, such cancellation shall be effective. Such notice shall include the reason(s) for cancellation.

Notice of cancellation by the Insurer also shall be mailed to the **Named Insured's** broker or the agent of record and the mortgagee or lienholder, if known, at their last known address; provided that such broker, agent and mortgagee or lien holder may opt to accept notification electronically. The Insurer shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

C.   If this Policy is cancelled by the **Named Insured**, the Insurer shall retain the customary short rate portion of the premium hereon. If this Policy is cancelled by the Insurer, the Insurer shall retain the pro rata portion of the premium hereon. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of

A01051IL                                                                                      Page 1 of 2
022014 ed.

cancellation.

D. The Insurer may non-renew this Policy by mailing written notice to the **Named Insured** at the address shown in the Declarations at least sixty (60) days before the end of the **Policy Period**. Such notice shall state the reason for non-renewal. A copy of such notice shall be sent to the **Named Insured's** broker or agent of record and to the mortgagee or lienholder, if known, at their last mailing address known by the Insurer. The Insurer shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

E. If the Insurer conditions renewal of this Policy on a premium increase of 30% or more or changes in deductibles, retentions or coverage that materially alter this Policy, the Insurer shall mail or deliver to the **Named Insured** written notice of such increase or change at least sixty (60) days before the Policy renewal or anniversary date, with a copy to the broker or agent of record, if known to the Insurer. If the Insurer does not provide such sixty (60) days' notice however provides notice at least thirty-one (31) days before the Policy renewal or anniversary date, then the Insurer shall extend the expiring **Policy Period** under the same terms and conditions to allow for such sixty (60) days' notice. If the Insurer fails to provide at least thirty-one (31) days notice as described above, the Insurer must renew the expiring policy under the same terms and conditions for an additional year or until the effective date of any similar coverage procured by the **Named Insured**, whichever is earlier. The insurer may increase the renewal premium upon such renewal, however such increase must be less than thirty-percent (30%) of the expiring term's premium, and notice of such increase must be delivered to the **Named Insured** on or before the expiration date of the current **Policy Period**. Proof of mailing of such notice or proof of receipt of such notice of intention to renew to the **Named Insured** may be proven by a sworn affidavit by the Insurer as to the usual and customary business practices of mailing notice pursuant to Section143.17a or may be proven consistent with Illinois Supreme Court Rule 236.

2.  This Policy is amended further by adding the following Clause **VIII. BANKRUPTCY** as follows:

**VIII. BANKRUPTCY**:

Bankruptcy or insolvency of the **Named Insured** shall not relieve the Insurer of its obligations nor deprive the **Named Insured** of its rights or defense under this Policy.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of this state.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

A01051IL                                                                                                    Page 2 of 2
022014 ed.

# POLICYHOLDER NOTICE – ILLINOIS

## IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS:

In the event of a complaint, please contact us at:

**Beazley Insurance Company, Inc.**
**Compliance Department**
**30 Batterson Park Road**
**Farmington, CT 06032**
**Tel: (860) 677-3700**
**Fax: (860) 679-0247**

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

**Illinois Department of Insurance**
**Consumer Division or Public Services Section**
**Springfield, Illinois 62767**

**Effective date of this Endorsement: 01-Apr-2015**
**This Endorsement is attached to and forms a part of Policy Number: V15357150201**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### SANCTION LIMITATION AND EXCLUSION CLAUSE

This endorsement modifies insurance provided under the following:

### EXCESS INSURANCE POLICY

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E02804
032011 ed.

Page 1 of 1

**Effective date of this Endorsement: 01-Apr-2015**
**This Endorsement is attached to and forms a part of Policy Number: V15357150201**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## FOLLOW FORM PENDING AND PRIOR LITIGATION/CLAIM EXCLUSION – WITH AMENDED DATE

This endorsement modifies insurance provided under the following:

**EXCESS INSURANCE POLICY**


In consideration of the premium charged for the Policy, it is hereby understood and agreed that this Policy shall follow any pending or prior litigation or claim exclusion in the **Followed Policy**, except that the pending or prior litigation or claim date under this Policy shall be: 01-Apr-2005.


All other terms and conditions of this Policy remain unchanged.



_____
Authorized Representative

**Effective date of this Endorsement: 01-Apr-2015**
**This Endorsement is attached to and forms a part of Policy Number: V15357150201**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### SPECIFIC INVESTIGATION/CLAIM/LITIGATION EVENT OR ACT EXCLUSION

This endorsement modifies insurance provided under the following:

**EXCESS INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that this Policy shall not apply to any claim:

1.  alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any such attributable notices, events, investigations or actions scheduled below (hereinafter "**Events**"); the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event**; or (b) any claim(s) arising from any **Event**; or any wrongful act, underlying facts, circumstances, acts or omissions in any way relating to any **Event**.

    **SCHEDULE OF EVENTS:**
    2011 US Department of Justice Subpoena
    30-Mar-2012 Iqbal Hussain reported claim
    11-Jun-2012 William Jason Gray reported claim and all
    related matters

2.  alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any such **Event(s)** or any interrelated wrongful act, regardless of whether or not such claim involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E05181                                                                          Page 1 of 1
112013 ed.

**EXCESS INSURANCE POLICY**

In consideration of the payment of the premium, in reliance upon all information and representations provided or made available by the **Insureds** to the Underwriters in connection with the underwriting of this Policy, the Underwriters and **Named Insured**, on behalf of all **Insureds**, agree as follows:

**I.    INSURING CLAUSE**

This Policy shall provide coverage in accordance with all of the terms, conditions and limitations (including, but not limited to, the exclusions and notice requirements) of the **Followed Policy** except for the Limit of Liability, the premium or as otherwise set forth herein.  Coverage hereunder shall attach only after all of the **Underlying Limits** have been exhausted through payments by the insurers of the **Underlying Insurance** of amounts covered under the **Underlying Insurance**. In the event of financial impairment or insolvency of an insurer of the **Underlying Insurance**, the risk of uncollectibility of such **Underlying Insurance** (in whole or in part) is expressly retained by the **Insureds** and is not insured by or assumed by the Underwriters.

**II.   DEFINITIONS**

A.    **Followed Policy** means the insurance policy identified in Item 6. of the Declarations.

B.    **Insureds** mean all persons and entities covered under the **Followed Policy**.

C.    **Named Insured** means all persons and entities set forth in Item 1. of the Declarations.

D.    **Policy Period** means the period set forth in Item 2. of the Declarations.

E.    **Underlying Insurance** means the **Followed Policy** and all other underlying insurance policies, if any, identified in Item 7. of the Declarations.

F.    **Underlying Limits** mean an amount equal to the aggregate of all limits of liability of the **Underlying Insurance**.

**III.  LIMIT OF LIABILITY**

The amount set forth in Item 3. of the Declarations shall be the maximum aggregate Limit of Liability of the Underwriters for all coverage under this Policy, regardless of the number of claims made against the **Insureds** or the time of payment and regardless of whether or not an extended reporting period applies.

**IV.  CHANGES TO UNDERLYING INSURANCE AND DEPLETION OF UNDERLYING LIMITS**

If, subsequent to the inception date of this Policy, the terms, conditions or limitations of an **Underlying Insurance** are modified, the **Insureds** must notify the Underwriters in writing, as soon as practicable, of such modification. If any changes to the **Followed Policy**: (a) expand coverage, (b) change the policyholder name or address, or (c) modify premium, this Policy shall not follow those changes unless the Underwriters agree in writing to do so. If any coverage under any **Underlying Insurance** is subject to a sub-limit, then this Policy provides no coverage excess of such sub-limit, but the Underwriters shall recognize payment of such amount as reducing the **Underlying Limit** by such amount.  Furthermore, if any amount covered under any policy issued to the **Insureds** outside of the United States of America (a "Foreign Policy") and the **Underlying Insurance** expressly provides for the reduction of the **Underlying Limit** by reason of payment of such amount under the applicable Foreign Policy, then the Underwriters shall recognize payment of such amount as reducing the **Underlying Limit** by such amount.

**V.   UNDERWRITERS RIGHTS**

The Underwriters have the same rights and protections as the insurer of the **Followed Policy** and, where the **Followed Policy** is not issued on an 'insurers duty to defend' basis, the Underwriters shall have the right, but not the obligation, at their sole discretion, to elect to participate in the investigation, settlement, prosecution or defense of any claim.

**VI.  NOTICES**

Where notice is permitted or required by the **Followed Policy**, the **Insureds** have the same rights and obligations to notify the Underwriters under this Policy, except that such notice shall be given to the Underwriters at the applicable address set forth in Item 5. of the Declarations. Notice to any other insurer shall not constitute notice to the Underwriters unless also given to the Underwriters as provided above.

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

## RESOLUTE PORTFOLIO℠

### For Private Companies

(Inclusive of Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Crime & Fidelity)

**INSURANCE RENEWAL APPLICATION-MIDWEST**

**NOTICE: APPLICABLE TO ALL COVERAGE SECTIONS EXCEPT CRIME & FIDELITY, THE INSURANCE POLICY FOR WHICH THIS RENEWAL APPLICATION IS SUBMITTED PROVIDES CLAIMS-MADE AND REPORTED COVERAGE, WHICH GENERALLY APPLIES ONLY TO CLAIMS FIRST MADE, AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS THEREIN. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS UNDER THE LIABILITY COVERAGE SECTIONS OF THIS POLICY SHALL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS. THE INSURER IS NOT OBLIGATED TO PAY ANY LOSS, INCLUDING DEFENSE COSTS, AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF LOSS, INCLUDING DEFENSE COSTS.**

**NOTICE TO MINNESOTA APPLICANTS: APPLICABLE TO ALL COVERAGE SECTIONS EXCEPT CRIME & FIDELITY, THE POLICY FOR WHICH THIS APPLICATION IS SUBMITTED IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD, PROVIDED SUCH CLAIM IS REPORTED TO THE INSURER OR THE INSURER'S AGENT OR BROKER IN ACCORDANCE WITH THE TERMS OF THE POLICY. THIS MEANS THAT ONLY CLAIMS ACTUALLY MADE DURING THE POLICY PERIOD ARE COVERED UNLESS COVERAGE FOR A DISCOVERY PERIOD IS PURCHASED. IF A DISCOVERY PERIOD IS NOT MADE AVAILABLE TO THE INSURED, THE INSURED RISKS HAVING GAPS IN COVERAGE WHEN SWITCHING FROM ONE COMPANY TO ANOTHER. MOREOVER, EVEN IF SUCH REPORTING PERIOD IS MADE AVAILABLE TO THE INSURED, THE INSURED MAY STILL BE PERSONALLY LIABLE FOR CLAIMS REPORTED AFTER THE PERIOD EXPIRES. CLAIMS-MADE POLICIES MAY NOT PROVIDE COVERAGE FOR WRONGFUL ACTS COMMITTED BEFORE A FIXED RETROACTIVE DATE. RATES FOR CLAIM-MADE POLICIES ARE DISCOUNTED IN THE EARLY YEARS OF A POLICY, BUT INCREASE STEADILY OVER TIME. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY. PLEASE READ THIS POLICY CAREFULLY.**

**NOTICE: APPLICABLE TO ALL COVERAGE SECTIONS AND JURISDICTIONS: PLEASE READ THE ENTIRE RENEWAL APPLICATION CAREFULLY, BEFORE SIGNING.**

CVS FL 12009 PV (3-10)

1

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

## I. GENERAL INFORMATION

1. Name of Company: Astellas Holding US, Inc.
2. Address: 1 Astellas Way
   City: Northbrook     State: IL     Zip Code: 60062
3. Nature of Business: Pharmaceutical research and development and marketing

4. Indicate below the Resolute Portfolio^SM coverages for which the company seeks renewal.

   ☒ Directors & Officers Liability      ☒ Fiduciary Liability
   ☐ Employment Practices Liability      ☐ Crime and Fidelity

5. Number of Employees (including Subsidaries):
   Total: 3,230   Total US: 3,101   Full Time: 3,220   Part Time: 10

6. Company's total revenues as of the most recent fiscal year end:            $2,885,997,081
7. Company's total assets as of the most recent fiscal year end:              $6,433,717,000
8. Cash flow from operations as of the most recent fiscal year end:           $_____
9. Is the Company in compliance with all debt and /or loan covenants?         ☒ Yes ☐ No
   If the answer is no, please attach a full explanation.

10. In the next 12 months is the Company contemplating (or has the Company completed within the last year) any actual or proposed merger, acquisition, or divestment, any registration for a public offering or a private placement of securities, any location, facility or office closings, consolidations or layoffs or any reorganization or arrangement with creditors under federal or state law?         ☒ Yes ☐ No
   If the answer is yes, please attach a full explanation.

## II. DIRECTORS & OFFICERS LIABILITY COVERAGE SECTION

1. Over the past 12 months, has there been any change to the board of directors, executive officers or senior management of the Company?         ☒ Yes ☐ No

2. Has there been any change in the Company's ownership structure within the last twelve months?   ☐ Yes ☒ No
   If the answer is yes, please attach a full description of ownership structure.

3. Please list all non-director and non-officer shareholders who directly or beneficially hold common stock and the percentage owned by each (if none, so indicate)

   | Non director or non officer shareholders: | % of voting shares owned: | |
   | --- | --- | --- |
   | N/A | N/A | % |
   | N/A | N/A | % |

## III. EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION

1. Within the last year has the Company updated its employment practices handbook, or human resources policies and procedures or department?         ☐ Yes ☒ No
   If the answer is yes, please attach a copy of updated materials and a description of changes.

2. Number of Employees who have left the Company over the past 12 months:

   Voluntary: 223          Involuntary: 304

CVS FL 12009 PV (3-10)                    2

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

## IV. FIDUCIARY LIABILITY COVERAGE SECTION

1.  Please complete the following information regarding the Company's employee pension benefits plan

| Pension Benefit Plan Name | Plan assets (current year) | Defined Contribution (DC) Or Defined Benefit (DB) | DB Only -Amount underfunded (only if more than 25%) | Number of Participants |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

2.  In the next 12 months is the Company contemplating (or has the Company completed within the last year) merging or terminating any plan(s)?
    If yes, please attach an explanation. ☐ Yes ☒ No

## V. CRIME

1.  Does the Company:

    a.  Allow the employees who reconcile the monthly bank statement to also sign checks, handle deposits and have access to check signing machines or signature plates? ☐ Yes ☒ No

    b.  Have procedures in place to verify the existence and ownership of all new vendors prior to adding them to the authorized master vendor list? ☒ Yes ☐ No

    c.  Verify invoices against a corresponding purchase order, receiving report and the authorized master vendor list prior to issuing payment? ☒ Yes ☐ No

2.  How often does the Company perform a physical inventory check of stock and equipment? $ Annual

3.  What is the limit above which the Company requires countersignature for their checks? $ 100,000

## VI. NOTICES TO COMPANY

The undersigned authorized representative of the Company declares that the statements set forth herein are true, and reasonable effort has been made to obtain sufficient information from all persons proposed for this insurance to facilitate the accurate completion of the Renewal Application. The undersigned authorized representative agrees that if the information supplied on this Renewal Application changes between the date of this Renewal Application and the effective date of the insurance, he/she will in order for the information to be accurate on the effective date of the insurance, immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations or agreement to bind insurance

The submission of this Renewal Application by the Company to the Insurer or signing of this Renewal Application by the Company does not obligate the Insurer to issue the insurance. It is agreed that this Renewal Application shall be the basis of the contract if a policy is issued and shall be deemed to be attached to, incorporated into and become part of, the policy. However, this paragraph does not apply in the state of Wisconsin.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS RENEWAL APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS RENEWAL APPLICATION AND MADE A PART HEREOF. NOTHING CONTAINED HEREIN OR INCORPORATED HEREIN BY REFERENCE SHALL CONSTITUTE NOTICE OF A CLAIM OR

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE. PROVIDED, HOWEVER, THIS PARAGRAPH DOES NOT APPLY IN THE STATE OF WISCONSIN.

NOTICE TO WISCONSIN RESIDENTS: THE SUBMISSION OF THIS RENEWAL APPLICATION BY THE COMPANY TO THE INSURER OR SIGNING OF THIS APPLICATION BY THE COMPANY DOES NOT OBLIGATE THE INSURER TO ISSUE THE INSURANCE. NOTHING CONTAINED HEREIN SHALL CONSTITUTE NOTICE OF A CLAIM OR POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE. ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS RENEWAL APPLICATION ARE MADE A PART HEREOF PROVIDED THIS RENEWAL APPLICATION AND SUCH MATERIALS ARE ATTACHED TO THE POLICY AT THE TIME OF ITS DELIVERY.

### WARNING

ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT S(HE) IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT MAY BE GUILTY OF INSURANCE FRAUD.

**NOTICE TO ARKANSAS APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO KENTUCKY APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

**NOTICE TO LOUISIANA APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO OHIO APPLICANTS**: "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

**NOTICE TO OKLAHOMA APPLICANTS:** "WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY".

**NOTICE TO TENNESSEE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

**NOTICE TO TEXAS APPLICANTS:** "ANY PERSON WHO KNOWLINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON."

**VI. DECLARATION AND SIGNATURE**

THE UNDERSIGNED AUTHORIZED REPRESENTATIVE IS MAKING THE REPRESENTATIONS IN THIS APPLICATION ON BEHALF OF THE COMPANY AND ALL ENTITIES OR PERSONS PROPOSED FOR COVERAGE UNDER THE POLICY.

| DATE | SIGNATURE | TITLE |
|---|---|---|
| 01/31/2014 | Stephen S. Knowles | CFO |
| | | (President, CFO, CEO) |

NOTE: This Renewal Application must be signed by the President, CFO and/or CEO of the applicant Company acting as the authorized agent of the persons and entity(ies) proposed for this insurance.

If this Renewal Application is completed in Florida, please provide the Insurance Agent's name and license number as designated. If this Renewal Application is completed in Iowa, please provide the Insurance Agent's name only.

**VII. PLEASE ATTACH THE FOLLOWING REQUIRED INFORMATION:**

☐ Most recent CPA prepared financial statements
☐ Most recent CPA Letter to Management and management's response (If this Letter is not issued, so indicate)
☐ Most recent EEO-1 Report (Applicable to Employment Practices Liability coverage only)

| PRODUCER (Insurance Agent or Broker) | INSURANCE AGENCY OR BROKERAGE |
|---|---|
| INSURANCE AGENCY TAXPAYER I.D. OR SOCIAL SECURITY NO. | AGENT OR BROKER LICENSE NO. |
| ADDRESS OF AGENT OR BROKER (Include Street, City and Zip Code) | |
| E-MAIL ADDRESS OF AGENT OR BROKER | |
| SUBMITTED BY (Insurance Agency) | INSURANCE AGENCY TAXPAYER I.D. OR SOCIAL SECURITY NO. |
| ADDRESS OF AGENT OR BROKER (Include Street, City and Zip Code) | |

*If this Application is completed in Wisconsin, the following notices apply:*

**Starr Indemnity & Liability Company**

399 Park Ave, New York, NY* Tel (646) 227-6377* Fax (631) 685-6738

- *If any Aggregate Limit of Liability as set forth in Item 4A. or 4B. of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this policy as respects the applicable Coverage Section(s) will be completely fulfilled and the **Insurer** will have no further obligations under this policy of any kind as respects the applicable Coverage Section(s) and the premium as respects the applicable Coverage Section(s) as set forth in Item 7 of the Declarations will be fully earned.*

- *If the Aggregate Policy Limit of Liability as set forth in Item 4C. of the Declarations is exhausted by the payment of **Loss**, the **Insurer** will have no further obligations of any kind as respects this policy and the applicable premium set forth in Item 7 of the Declarations will be fully earned.*

- *The Discovery Period premium shall be fully earned at the inception of the Discovery Period.*

- *In the event the policy is canceled by the **Parent Company**, the **Insurer** shall retain the customary short rate proportion of the premium.*

- *This policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective time of the **Organizational Change**.*

RESOLUTE PORTFOLIO ᔆᴹ is a registered service mark owned by C. V. Starr & Co., Inc.

**Astellas US Holding, Inc.**
**2014 D&O and Fiduciary Coverage Renewal Application**

Answer to Question I. 10.

Astellas closed OSI Pharmaceuticals in New York and Perseid Therapeutics in California during FY13. All of the Perseid employees as well as OSI employees (except nine) were subject to a mandatory reduction in force. The nine former OSI employees moved to a new location in Farmingdale, New York. There are no plans to dissolve Perseid or OSI at this time.

Isis House was sold on 8/15/2013. This was held by the UK entity, Oxrford Real Estate Owner, Ltd. (UK) which was a single purpose entity to hold the real estate. It is anticipated this entity will be liquidated during FY14.

Astellas Bio, Inc. is expected to be liquidated during FY14.

# Exhibit C

April 15, 2015

Alex A. Garcia
MARSH USA INC (SAFE-NORTHEAST)
540 WEST MADISON STREET
CHICAGO, IL 60661-0000

RE:   Astellas US Holding, Inc.

Insuring Company: Federal Insurance Company

Dear Alex:

Enclosed is our Directors and Officers Liability Excess Chubb Policy for the above referenced Insured.

I want to thank you for the opportunity to underwrite this account.

Please let me know if I can be of further assistance.

Sincerely,

Justin J Blacklock

CHUBB SPECIALTY INSURANCE

k b

PREMIUM BILL

Date:   04/15/2015

Insured:   Astellas US Holding, Inc.

Producer:   MARSH USA INC (SAFE-NORTHEAST)
540 WEST MADISON STREET
CHICAGO, IL 60661-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  8223-5816

Policy Period:   April 1, 2015 to April 1, 2016

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

| Product | Effective Date | Commission Rate | Premium |
|---------|----------------|-----------------|---------|
| D&OEXCB | 04/01/15 | 0.00 % | $55,440.00 |
| | | | |
| | | | |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $55,440.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $55,440.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 26-10-0426 (Ed. 2/98)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company:  Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), effective December 26, 2007, this policy makes available to you insurance for losses arising out of certain acts of terrorism.  Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 1/2003)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 1/2003)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

## IMPORTANT POLICYHOLDER NOTICE

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

# EXCESS POLICY

DECLARATIONS

Policy Number 8223-5816

**Federal Insurance Company**,
a stock insurance company,
incorporated under the laws of
Indiana, herein called the
Company.

Item 1. **Parent Organization**: Astellas US Holding, Inc.

Item 2. Principal Address:     1 ASTELLAS WAY
NORTHBROOK, IL 60062

Item 3. Limit of Liability:

Each **Policy Period**        $10,000,000

Item 4. **Underlying Insurance**:

(A)     **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Starr Indemnity & Liability Company | SISIFNL20068315 | $5,000,000.00 | April 1, 2015 To April 1, 2016 |

(B)     Other Policies

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Beazley Insurance Company, Inc. | V15357150201 | $5,000,000.00 | April 1, 2015 To April 1, 2016 |

Item 5. **Policy Period**:         From:   12:01 a.m. on April 1, 2015
                                      To:     12:01 a.m. on April 1, 2016

Item 6. Endorsements Effective at Inception: See Schedule of Forms Attached

Item 7. Termination of Prior Policies: 8223-5816  (Apr 1, 2014 - Apr 1, 2015)

Item 8. Pending or Prior Date: April 1, 2005

The Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_Maureen A. Brundage_
_____
Secretary

_Paul J. Krump_
_____
President

_____
04/15/2015
Date

_____
Authorized Representative

Form 14-02-2272 (Ed. 5/97)

# Excess Policy

In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this policy, the Company agrees as follows:

**Insuring Clause**

1. The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in Item 4(B) of the Declarations, except as otherwise provided herein.

**Maintenance of Underlying Insurance**

2. All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and shall afford the same coverage provided by all **Underlying Insurance** in effect upon inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder.

**Depletion of Underlying Limit**

3. Only in the event of exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance**, or the **Insureds** in the event of financial impairment or insolvency of an insurer of the **Underlying Insurance**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

   The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Company.

**Underlying Sublimits**

4. If any **Underlying Limit** is subject to a **Sublimit**:

   a. coverage hereunder shall not apply to any claim which is subject to such **Sublimit**, however,

   b. the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such claim subject to such **Sublimit**.

**Limit of Liability**

5. The Company's maximum liability for loss shall be the amount set forth in Item 3 of the Declarations.

**Claim Participation**

6. The Company may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this policy even if the **Underlying Insurance** has not been exhausted.

| | | |
|---|---|---|
| **Pending or Prior Matters** | 7. | The Company shall not be liable under this policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 8 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein. |
| **Subrogation - Recoveries** | 8. | In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insured**. |
| | | Any amounts recovered after payment of loss hereunder shall be apportioned in the inverse order of payment to the extent of actual payment. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries. |
| **Notice** | 9. | The **Insureds** shall, as a conditions precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**. |
| | | Notice to the Company under this policy shall be given in writing addressed to: |
| | | Notice of claim: Home Office Claims Department<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, New Jersey 07059 |
| | | All other notices: Executive Protection Practice<br>Chubb Group of Insurance Companies<br>15 Moutain View Road<br>Warren, New Jersey 07059 |
| | | Such notice shall be effective on the date of receipt by the Company at such address. |
| **Company Authorization Clause** | 10. | By acceptance of this policy, the **Parent Organization** named in Item 1 of the Declarations agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for under this policy (except the giving of notice to apply for any extended reporting period), and the **Insureds** agree that the **Parent Organization** shall act on their behalf. |
| **Alteration** | 11. | No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the Company. |

# *Excess Policy*

***Policy Termination***     12.   This policy shall terminate at the earliest of the following times:

(a)   sixty days after the receipt by the **Parent Organization** of a written notice of termination from the Company;

(b)   upon the receipt by the Company of written notice of termination from the **Parent Organization**;

(c)   upon expiration of the **Policy Period**;

(d)   thirty days after the effective date of any alteration or termination of any **Underlying Insurance**, whether by the **Insureds** or any insurer of the **Underlying Insurer**, unless the Company (i) receives written notice of such alteration or termination from the **Parent Organization**, (ii) receives such information as the Company reasonably requests, and (iii) agrees, pursuant to an endorsement, not to terminate this policy; or

(e)   at such other time as may be agreed upon by the Company and the **Parent Organization**.

Notice of cancellation or non-renewal of the **Primary Policy** duly given by the primary insurer shall serve as notice of the cancellation or non-renewal of this policy by the Company.

The Company shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata.

***Termination of Prior Policies***     13.   Any policies specified in Item 7 of the Declarations shall terminate, if not already terminated, as of the inception date of this policy.

***Policy Definitions***     14.   When used in this policy:

**Insureds** means those persons or organizations insured under the **Primary Policy**.

**Parent Organization** means the organization designated in Item 1 of the Declarations.

**Primary Policy** means the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

**Policy Period** means the period of time specified in Item 5 of the Declarations, subject to prior termination in accordance with Section 12 above. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

**Sublimit** means any **Underlying Insurance** limit of liability which:

a.   applies only to a particular grant of coverage under such **Underlying Insurance**, and

b.   reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

| | |
|---|---|
| ***Policy Definitions***<br>*(continued)* | **Underlying Insurance** means all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them.<br><br>**Underlying Limit** means the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all **Underlying Insurance**, subject to any **Sublimits**, plus the applicable uninsured retention, if any, under the **Primary Policy**. |

*Directors and Officers Liability Excess Chubb*

# Schedule of Forms

To be attached to and form part of          Company:   Federal Insurance Company
Policy No.   8223-5816

Issued to:    Astellas US Holding, Inc.


14-02-16802 (7/14 ed.)

14-02-17626 (6/11 ed.)

14-02-19844 (3/13 ed.)

14-02-3806 (2/01 ed.)

14-02-9228 (2/10 ed.)

14-02-9963 (12/05 ed.)

Form 14-02-1252 (Ed. 02-01)

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: April 1, 2015

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8223-5816

Issued to:  Astellas US Holding, Inc.

---

EXCESS POLICY AMENDMENTS ENDORSEMENT

In consideration of the premium charged, it is agreed this Policy is amended as follows:

(1)     Section 1, Insuring Clause, is deleted and replaced with the following:

The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the **Underlying Insurers** and/or the **Insureds** or any other party shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy**, except as otherwise provided herein.

(2)     Section 2, Maintenance of Underlying Insurance, is amended by adding the following at the end thereof:

This policy shall not be invalidated solely by reason of any failure of the **Insured** to comply with the foregoing, but under no circumstances shall the Company be liable under this policy earlier or to any greater extent than it would have been if the **Insured** had complied with this condition.

(3)     Section 3, Depletion of Underlying Limit, is deleted and replaced with the following:

In the event of exhaustion of the **Underlying Limit** by reason of the **Underlying Insurers** and/or the **Insureds** or any other party, paying in legal currency loss which:

(A)     except for the amount thereof, would have been covered hereunder; or

(B)     is recognized hereunder as eroding the **Underlying Limit**,

this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

(4)     Section 6, Claim Participation, is deleted and replaced with the following:

14-02-16802 (07/2014)                     Page 1

The Company may, at its sole discretion, reasonably participate in the investigation, settlement or defense of any claim covered by this policy even if the **Underlying Insurance** has not been exhausted.

(5)    Section 9, Notice, is amended as follows:

    (a)    The first sentence is deleted and replaced with the following.

        The **Insureds** shall give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**.

    (b)    The last sentence is deleted and replaced with the following:

        Such notice shall be effective upon the earliest of the date of receipt by the Company at such address or one day following the date such notice is sent.

(6)    The terms of the following provisions of this policy are deleted and replaced with the terms of same or similarly identified provisions in the **Primary Policy**:

    Section 7 (Pending or Prior Matters) subject to the Pending or Prior Date set forth in Item 8 of this policy;

    Section 8 (Subrogation – Recoveries);

    Section 10 (Company Authorization Clause); and

    Section 12 (Policy Termination),

provided that it is expressly understood and agreed that this policy is an agreement that is separate and independent of the **Primary Policy**, and the Company retains the separate and independent right to interpret the terms and conditions of this policy, including the extent to which the provisions identified above conform with the terms of the **Primary Policy**.

(7)    Section 11, Alteration, is deleted and replaced with the following:

No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the Company, unless such written endorsement requirement is waived in writing by the Company.

(8)    Section 13, Termination of Prior Policies, is deleted.

(9)    The following definition is added to Section 14, Policy Definitions:

"**Underlying Insurer**" means the insurer(s) of each respective policy of **Underlying Insurance**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: April 1, 2015

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8223-5816

Issued to: Astellas US Holding, Inc.

AMEND NOTICE ENDORSEMENT

In consideration of the premium charged, it is agreed that Section 9, Notice, of this policy is deleted and replaced with the following:

*Notice*

9.   The **Insureds** shall give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**.

   (A)   Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing to one of the following addresses:

   1.   specialtyclaims@chubb.com;

   2.   Attn: Claims Department
   Chubb Group of Insurance Companies
   82 Hopmeadow Street – PO Box 2002
   Simsbury, Connecticut 06070-7683; or

   3.   Attn: Claims Department
   Chubb Group of Insurance Companies
   82 Hopmeadow Street
   Simsbury, Connecticut 06089

   (B)   All other notices to the Company under this policy shall be given in writing addressed to:

   Attn: Chubb Specialty Insurance Underwriting Department
   Chubb Group of Insurance Companies
   15 Mountain View Road
   Warren, New Jersey 07059

   (C)   Any notice described in Subsection (A) or (B) above shall be effective on the date of receipt by the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: April 1, 2015

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8223-5816

Issued to:  Astellas US Holding, Inc.

ILLINOIS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

All references in the policy to the term "spouse" or "domestic partnership" are deemed to include a party to a civil union or domestic partnership.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-19844 (03/2013)                    Page 1

**ENDORSEMENT**

Effective date of
this endorsement: April 1, 2015

Company: Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8223-5816

Issued to: Astellas US Holding, Inc.

---

### ILLINOIS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) Section 7. of the policy, Pending or Prior Matters, is amended by adding the following phrase to the end of the section:

"about which any **Insured** knew or should have known."

(2) Section 13. of the policy, Termination of Prior Policies, is amended in its entirety as follows:

"Any policies issued by the Company or its affiliates and specified in Item 7 of the Declarations shall terminate, if not already terminated, as of the inception date of this policy."

(3) The policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: April 1, 2015

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8223-5816

Issued to: Astellas US Holding, Inc.

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: April 1, 2015

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8223-5816

Issued to: Astellas US Holding, Inc.

---

RELIANCE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    In granting coverage under this policy the Company has relied upon the statements and representations contained in the Starr Indemnity & Liability Company application form dated as of March 16, 2015, and all other documents included in the "Application" (as that term is defined in the **Primary Policy**), as being true and complete.

(2)    If the "Application" (as defined in the **Primary Policy**) does not include a written warranty stating that the **Insureds** know of no undisclosed grounds for potential claims to which the **Primary Policy** would respond, then in granting coverage under this policy the Company has also relied upon the last such written warranty provided by the **Insureds**, to the insurer of their primary Directors & Officers liability (or equivalent) insurance (the "Last Primary Warranty"), as being true and complete.

(3)    If any layer of **Underlying Insurance** (other than the **Primary Policy**) was first inaugurated after the date of the Last Primary Warranty, then in granting coverage under this policy the Company has also relied upon the last written warranty provided by the **Insureds**, to the insurer of any such intervening layer of **Underlying Insurance**, as being true and complete.

(4)    In granting coverage under this policy the Company has also relied upon the statements and representations in any documents that were submitted to it by the **Insureds** in connection with the underwriting of this policy, but that are not otherwise enumerated in paragraph (1), (2) or (3) above, as being true and complete.

The statements, representations and warranties referred to in paragraphs (1) through (4) above are the basis of the Company's decision to insure the risk to which this policy applies, and the documents referred to in paragraphs (1) through (4) above shall be deemed attached to, incorporated into and made a part of this policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative